[No. G033875. Fourth Dist., Div. Three. Dec. 7, 2004.]

GENE C. MIX et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MANDEEP BEHNIWAL et al., Real Parties in Interest.

COUNSEL

Law Offices of Michael G. York and Michael G. York for Petitioners.

No appearance for Respondent.

Law Offices of Barry A. Ross and Barry A. Ross for Real Parties in Interest.

OPINION

SILLS, P. J.—

## I.  INTRODUCTION

This is a case of first impression regarding the proper standard on which to judge a motion to expunge a notice of lis pendens when the trial court has *already* substantively rejected the recording party's claim. Up to 1992, we knew what the standard was. It had been clearly articulated in *Peery v. Superior Court* (1981) 29 Cal.3d 837 [176 Cal.Rptr. 533, 633 P.2d 198]: If the claimant could show that a *substantial issue* existed for appeal, the motion to expunge would be denied even though the claimant had already lost at the trial level. (*Id.* at p. 845.)

The *Peery* standard was rooted in former Code of Civil Procedure section 409.1,[1] which used the phrases "proper purpose" and "good faith," i.e., seemed to point to the claimant's subjective state of mind in recording the notice of lis pendens. For claimants it was a pretty easy standard, and hence their lis pendens were likely to stay on the property for the duration of any appeal.

But when, in 1992, the Legislature replaced section 409.1 with section 405.32, all language focused on subjectivity came out. The new language required the claimant to establish by a "preponderance of the evidence the probable validity of the real property claim." In fact, the phrase "probable validity" is used twice in the statute.[2]

In the case before us, however, the trial court explicitly used the old *Peery* standard in rejecting a motion to expunge a notice of pending litigation brought by the winners at trial, the owners of the property in question. The owners then petitioned us for a writ of mandate. We scheduled an order to show cause in order to examine the problem of the appropriate standard in light of the 1992 legislation.

In sum, we will conclude that the 1992 legislation requires nothing less than that the trial court grant a motion for the expungement of lis pendens pending appeal in the wake of the defeat of the claimant in the trial court. There is but one, very unlikely, exception, inherent in the statutory language of *probable* validity: If the trial judge himself or herself is willing to find, on the record, that the trial court's ruling will "probably" be overturned on appeal, then the trial court should deny the motion. Of course, it is going to be a rare case indeed where the trial court will be willing to state on the record that its decision in a case will "probably" be reversed. Ninety-nine-point-ninety-nine percent of the time expungment will be required.

However, we will, in the process, point out an important safeguard for recording parties in cases where reversal may indeed seem *probable to the appellate court*: in such cases the aggrieved claimant may ask for a stay under rule 56(c) in connection with a petition for writ of mandate taken pursuant to section 405.39.

---

[1] All further statutory references, unless otherwise specifically designated, are to the Code of Civil Procedure. All references to any rule are to the California Rules of Court.

[2] Here is the language of the statute, quoted in its entirety: "In proceedings under this chapter, the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim. The court shall not order an undertaking to be given as a condition of expunging the notice if the court finds the claimant has not established the probable validity of the real property claim."

## II. FACTS

Gene and Judy Mix (the Sellers) put their Irvine condominium on the market in 2002 with an asking price of $520,000. On June 27, 2002, Sellers received two offers at the asking price, one by a party not involved in this litigation and another by Mandeep and Amandeep Behniwal (the Buyers). Because of the competition between the two prospective buyers, Sellers presented a counteroffer to Buyers at $540,000.

The Buyers accepted this counteroffer and signed a sale agreement. However, unbeknownst to the Buyers, the Sellers had not *personally* signed the sale agreement. The document was actually signed by Sellers' real estate agent, Kim Seidenberg. More on that in five paragraphs.

After the Buyers signed the sale agreement, Seidenberg opened an escrow account with Mariner's Escrow pursuant to the agreement. The Sellers then completed and sent various standard disclosure documents to the Buyers.

However, after the transaction between Sellers and Buyers was underway, the Sellers received yet another offer on the Irvine property, this one from one Sebastian Naum. Naum's offer on the condominium was for $560,000, a total of $20,000 more than the selling price arranged with Buyers. Naum contacted Sellers' colisting agent, Gary Hasselgesser, who told Naum that his was a "back up" offer on the property and he should hand deliver a $5,000 deposit check to the Mixes if he was interested in the property.

On August 13, 2002, the Sellers sought to cancel the Mariner's Escrow account between themselves and the Buyers. The Sellers indicated in correspondence that the escrow needed to be withdrawn because of health complications that Mr. Mix was experiencing. On August 14, 2002 the Sellers unilaterally signed amended escrow instructions authorizing Mariner's Escrow Company to cancel the escrow for the Irvine condominium and to return the Buyers' deposit in the full amount of $10,000.

Following the Sellers' unilateral termination of escrow, the Buyers filed a complaint for breach of contract praying for specific performance and declaratory relief. Concurrent with the filing of their civil complaint, the Buyers also recorded a lis pendens on the Irvine property.

Judge Mary Fingal Erickson held a bench trial on the claim for specific performance.[3] At the trial the Sellers asserted that their failure to personally

---

[3] The case was originally assigned to Judge James Brooks for all purposes, but apparently his docket was occupied, so the trial was assigned to Judge Erickson. For some reason, however, Judge Brooks heard the motion to expunge the lis pendens. Thus the judge who heard

sign the sales agreement was the loophole (our phrase, not theirs) through which they could crawl out of the deal. (In more precise legal terms, the Sellers argument was that, under Civil Code section 2310,[4] absent their personal signatures on the sale agreement, no contract had ever been formed in the first place.)

The trial court agreed with the Sellers. In the wake of the trial court's decision, the Sellers requested that the Buyers voluntarily expunge the lis pendens against the property. The Buyers refused. The Sellers then made a motion to expunge the lis pendens, which, for some reason, was heard by Judge Brooks to whom the case had originally been assigned. (But see *Abbott v. Mandiola* (1999) 70 Cal.App.4th 676, 677–678 [82 Cal.Rptr.2d 808] [holding that same judge who declares mistrial should hear request for sanctions in its wake, and pointing out that reassignment for trial from direct calendar judge can lead "to trouble"].) Judge Brooks denied the motion, based on the premise that expungement was impossible prior to time for the filing of a notice of appeal having expired, an idea subsumed in the old *Peery* standard.[5]

---

the expungement motion was not the judge who heard the trial. That seems anomalous even where the rule of direct calendaring (one judge assigned to case for all purposes) seems to be more honored in the breach than in practice. Surely the judge who made the substantive decision against the claimant would be in a better position to ascertain the "probable validity" of the claim. But this anomaly is probably the very reason the case has reached us in this posture: If things had gone according to Hoyle, the trial judge who made the substantive decision ruling against the claimant (Judge Erickson, or Judge Brooks if he had conducted the trial) would have made the decision on the motion to expunge the lis pendens, and probably would have *granted* the motion, so that in all likelihood it would be the Buyers and not the Sellers who would be the petitioning party.

[4] Civil Code section 2310 provides: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof."

[5] Here are Judge Brooks's comments in denying the motion: "Although Judge Erickson has found in the bifurcated trial that the plaintiff failed to establish [a] right to specific performance, it appears that is insufficient to expunge the lis pendens until the time for appeal has lapsed. *McKnight* 185 Cal.App.3d 639, 651 [230 Cal.Rptr. 57]. Although defendant seeks to distinguish *McKnight*, because [the] opinion predated change in the burden of proof on the motion to expunge, that did not affect the portion of *McKnight* regarding whether a judgment, where time for appeal has not lapsed, is sufficient to support request to expunge. Under *McKnight*, which cited to *Mason vs. Super Ct.*, (1985) 163 Cal.App.3d 989 [210 Cal.Rptr. 63], defendant must wait until time for appeal has lapsed, unless appellate review would be patently unmeritorious. Defendant has not shown how appellate review would be unmeritorious. . . . Also, *McKnight* was overruled on issues not related to this issue." (Italics added.)

## III. DISCUSSION

### A. *The Standard for Expunging Lis Pendens Before 1992*

Before the 1992 repeal of section 409.1 the established common law standard for evaluating motions to expunge notices of lis pendens pending appeal was the "substantial issue on appeal" test articulated in *Peery v. Superior Court, supra,* 29 Cal.3d at page 844. The standard was a logical outgrowth of the then-existing general statutory language, which said in pertinent part: "the court in which the action is pending *shall,* upon motion of a party to the action . . . order the notice be expunged, *unless* the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that: (a) The action does affect title to or right of possession of the real property . . . and (b) . . . the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith." (Former Code Civ. Proc., § 409.1 (Stats. 1992, ch. 883, § 2, pp. 4100–4101, italics added. [repealing Civ. Code provision].)

This statute was interpreted as a *subjective* standard pegged to the recording party's *proper purpose* and *good faith* in commencing litigation. (See *Peery, supra,* 29 Cal.3d at p. 844; *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 528–529 [174 Cal.Rptr. 694, 629 P.2d 495].) Of course, subjective good faith could be shown by objective facts (*Peery, supra,* 29 Cal.3d at p. 844), a point which was ultimately translated into the "substantial issue for review" test.

Under this relatively easy subjective standard, there was also a general reluctance to look into the merits of issues asserted on appeal. (*See Malcom, supra,* 29 Cal.3d at pp. 526–527 [holding that the trial court should not look into the merits underlying the recording of the notice unless the facts are used to show bad faith or improper purpose]; *Peery, supra,* 29 Cal.3d at 844–845 [the Legislature did not intend a "minitrial of the merits of the case to decide the motion to expunge"].) Indeed, the standard was so easy for the claimant that one commentator observed that a "lis pendens could be maintained of record even if the claimant was unable to demonstrate *any* factual merit in the claim." (Cal. Lis Pendens Practice (2d ed. 2001) Code Comments, p. 205, italics added.)

Many commentators criticized the subjective standard and advocated its reform. (See 3 Witkin, Cal. Procedure (4th ed. 1997) Actions, § 362, pp. 453–454; Castle, *After Malcom v. Superior Court and Peery v. Superior Court: A Due Process Analysis of California Lis Pendens* (1982) 70 Cal. L. Rev. 909.) In 1992 the Legislature agreed that the standard was too easy and decided to toughen it up.

## B. *The Standard for Expunging Lis Pendens After 1992*

In 1992, the Legislature conducted an overhaul of the statutes regulating lis pendens to address the concerns of abuse. Section 409.1 was replaced with section 405.32, which states in pertinent part, "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the *probable validity* of the real property claim." (Italics added; for the entire text of the statute see footnote 2, *ante*.) Probable validity was defined to mean "more likely than not that the claimant will obtain a judgment against the defendant on the claim." (§ 405.3.) And the code comment to section 405.32 was also clear in rejecting the old subjective standard: "This section is intended to disapprove *Malcolm v. Superior Court* (1981) 29 Cal.3d 518 [174 Cal.Rptr. 694, 629 P.2d 495] and other cases which have held that the court on a motion to expunge may not conduct a 'minitrial' on the merits of the case. This section is intended to change California law and to require judicial evaluation of the merits." (14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 405.32, p. 346.)

## C. *The "Probable Validity" Standard, Not the "Substantial Issue" Standard, Should Have Been Applied Here*

We should note at this point that in changing the standard to "probable validity," the Legislature was dealing with one of a small class of legal problems where the *passage of time itself* exacts a toll. These are situations that are a variation of the tradeoff between admiring a beautifully glazed fruit tart and actually eating it. (Child custody and juvenile dependency law are two such other areas of law.) That is, the passage of time makes it impossible to preserve a right pending appeal without simultaneously diminishing some other right. Such cases are the legal equivalent of Greek tragedy: Caught between conflicting edicts of the gods, there is no way to have a completely happy ending.

In the case of notices of lis pendens, either one of two things are bound to happen: One, the notice of lis pendens will be maintained throughout the duration of the appeal and continue to effectively prevent the sale of the property even though the claim has already been rejected by one level of the judiciary. Or, alternatively, the notice of lis pendens will be expunged and the claimant will run the risk the property will be sold and any possibility of relief as to that *particular* property will be lost.

Our instinct, as appellate judges, is to side with the first alternative (keeping the notice of lis pendens on the property pending appeal), since it both preserves the status quo and the opportunity for meaningful appellate relief, particularly in cases where the claimant requests specific performance.

After all, if the lis pendens were removed, the appellant might be denied the very relief which the appellant seeks, despite whatever decision an appellate court might make, which would make the whole appellate process almost meaningless.

But the alternative—which runs the risk of nullifying any appellate relief sought—has advantages of its own. It restores the full bundle of rights otherwise available to the prevailing property owner, including the ability to freely transfer the property. The Legislature has provided that upon recordation of the order expunging a lis pendens, persons not party to the litigation are deemed *not* to have notice of the real property claim, "irrespective of whether that person possessed actual knowledge of the action or matter and irrespective of whether or how the knowledge was obtained." (§ 405.61.) Further, the Legislature has declared that it intended, when it adopted section 405.61, to "provide for the absolute and complete free transferability of real property after the expungment or withdrawal of a notice of pendency of action." (*Ibid.*) Thus, given a choice between two systems, (1) where property can be readily freed up for sale after trial court litigation or (2) where property will continue to be tied up for a long period pending an appeal if a claimant can come up with some nonfrivolous argument on which to base that appeal, it is apparent that the Legislature chose free transferability of the property by the prevailing property owner as the preferred option.

■ We need only add that the Buyers' argument the old *Peery* standard is still viable because it has not been explicitly overruled in subsequent *case law* is simply wrong. There are more things in the law than just case decisions. Since the Legislature changed the words of the governing statute, and *Peery* was based on the earlier set of words, its rule necessarily falls with those words. (See *Moore v. State Bd. of Control* (2003) 112 Cal.App.4th 371, 383 [5 Cal.Rptr.3d 116] ["[T]he very act of amending a statute demonstrates an intent to change the preexisting law[. T]he presumption must be that it was intended to change all the particulars upon which we find a material change in the language of the act."].)[6]

### D. *Applying the Proper Standard Means the Winner Was Entitled to Expungement*

The proper standard as specified by section 405.32 thus was the "probable validity" of the Buyers' claim, not simply whether they would escape the

---

[6] By the same token, the reliance of the trial court on *Mason v. Superior Court* (1985) 163 Cal.App.3d 989 [210 Cal.Rptr. 63] and *McKnight v. Faber* (1986) 185 Cal.App.3d 639 [230 Cal.Rptr. 57] (overruled on a different point in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219 [266 Cal.Rptr. 638, 786 P.2d 365]) was misplaced, because both cases were, as they had to under the law as it stood then, simply following *Malcom* and *Peery* to their logical conclusions.

appellate process without being sanctioned for frivolousness. But this standard still requires some explication.

The phrase "probable validity" in section 405.32 was obviously written from the perspective of a trial court judge trying to forecast, at some point before trial, the "probable" outcome in the *trial* court. The statute is silent as regards the context of trial court judge trying to forecast the probable outcome in the *appellate* court.

However, it would be illogical and anomalous if the standard for forecasting a future decision by the appellate court were any *less* rigorous than the standard for forcasting a future decision of the trial court. At the early (pretrial) stage, just like an application for a preliminary injunction, no direct adjudication of the merits will have taken place, just forecasts of probabilities. If anything, the "probable validity" or invalidity of a real property claim will surely be less certain than it would be after trial, when the merits *have* been adjudicated. Trials do wonders to clear up cloudy crystal balls.

Las Vegas casinos can make money with only a 51 percent probability the house will win. In comparison, the probabilities of success on appeal are low. Roughly 80 percent of civil appeals result in affirmances, and courts of appeal begin any case with the *presumption* that the judgment is correct. (E.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227] [on appeal court presumes judgment of the trial court is correct]; *Denham v. Superior Court (Marsh and Kidder)* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] [" 'A judgment or order of the lower court is *presumed correct.*' "].) In terms of what is "probable," an appellant winning is the old journalistic definition of news: Man bites dog. We may therefore conclude that if the claimant has lost at the trial level, section 405.32 mandates that the lis pendens be expunged—mostly.

Why only "mostly"? Because we must remember that the Legislature used the phrase "probable validity," not "certain validity," in section 405.32, a distinction reminiscent of Sherlock Holmes's famous dictum for solving cases—the solution is the improbable that is left after the impossible has been eliminated. It appears that in drafting section 405.32 as it did, our Legislature joined Holmes in choosing to distinguish between improbability and impossibility, and thus decided not make section 405.32 a *per se* rule.

Thus it is improbable, but not impossible, that a trial court, having decided a case against a claimant, might nevertheless forecast the reversal of its own decision on appeal. Specifically, a trial court might feel bound by a particularly unpersuasive appellate decision (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] [all trial

courts are bound by nonconflicting decisions of all appellate courts]), and believe the decision would not be followed, or disapproved when the case actually reached the appellate or Supreme Court level, where the court *could* reject the unpersuasive precedent. But that scenario is obviously not going to occur very often.

The case before us certainly doesn't fit this microscopic exception. Judge Brooks merely thought the old *Peery* rule (and its extension under *McKnight*) still viable. He didn't say, for example, that Judge Erickson's decision on the merits was so conspicuously wrong that the Buyers' real property claim was still "probably" valid. Nothing in his explanation of his decision suggests that he thought Judge Erickson's decision would be reversed on appeal.

■ To reiterate, the rule is this: If the claimant loses at trial, the lis pendens must be expunged unless the trial court is willing to find that the probabilities are that its *own decision* will be reversed on appeal. The irony is that the law has gone from a pre-1992 situation where it was almost impossible to get a lis pendens expunged—even after a claimant lost at trial—to a post-1992 situation where it is almost impossible to prevent a lis pendens from being expunged if the claimant loses. But that, as we showed above, is evidently what the Legislature wanted.

### E.  *Harsh Results Can Be Tempered*

We have just shown that the logic of the Legislature's standard demands that *almost* all of the time the trial court must expunge a lis pendens when the claimant loses at trial. But there are miscarriages of justice. Suppose the case before us is one of them? Suppose that Judge Erickson's decision on the merits is so pregnant with grounds for reversal that one could still say, at least at the level of an intermediate appellate court, that the Buyers real property claim was "probably" valid?

■ The Legislature built better than it knew. Decisions on motions to expunge lis pendens fall into that class of trial court orders which are expressly *not* appealable; intermediate appellate courts only reach them via petitions for writ of mandate. (See § 405.39 ["No order or other action of the court under this chapter shall be appealable. Any party aggrieved by an order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate. . . ."].)[7] As such, courts of appeal have the power to issue stay orders when they receive such petitions. (Cal. Rules of Court, rule 56(c)(4); see also *Markley v. Superior Court* (1992) 5

---

[7] Other examples are orders denying motions for summary judgment and orders denying further reunification services in juvenile dependency cases.

Cal.App.4th 738, 750, fn. 15 [7 Cal.Rptr.2d 328] [dicta that "it is accepted that an appellate court has the power to issue a temporary stay of proceedings to maintain the status quo pending the determination of a petition for extraordinary relief"].) And, in fact, appellate courts are on record as having exercised that power to prevent lis pendens from being expunged pending appeal. (E.g., *Carver v. Teitsworth* (1991) 1 Cal.App.4th 845, 850 [2 Cal.Rptr.2d 446] [after expungement of lis pendens in trial court, claimant filed a petition for writ of mandate seeking review of expungement order; appellate court granted stay and directed trial court to reinstate its lis pendens until appeal was over].)[8]

As applied to the present case, then, the scenario might go like this: Since the Sellers prevailed over the Buyers at trial, the Sellers' motion for expungement of lis pendens was required to be granted (granted, unless the trial court was willing to go out on a limb and forecast its own reversal). The Buyers would then have brought a petition for writ of mandate, seeking review of the trial court's expungement decision pursuant to section 405.39. Presumably, in the course of that petition they would have requested an immediate stay of the expungement order, and provided, pursuant to rule 56(c), necessary documentation to demonstrate the "probable validity" of their real property claim. *This* court would then have looked at the request for stay, and, if we were convinced that the Buyers had indeed "established by a preponderance of evidence the probable validity of the real property claim," would stay the expungement pending appeal, just as the court had done in *Carver*. (Albeit *Carver* was using the pre-1992 standard, while we would use the post-1992 probable validity standard.)

The possibility of the stay, then, is an important safety valve for those cases where the miscarriage of justice may so radiate from the record that the appellate court, at least, is willing to prophesy ultimate reversal based on a stay request made at the beginning of the appellate process. Because this case is the first to explicitly apply the post-1992 standard to claimants who lost at the trial level, we shall now take pains to specify that the this opinion is without prejudice to the Buyers to bring their own petition for a writ of mandate and rule 56(c) application for a *stay* of the order expunging the lis pendens that we now direct the court, on the Sellers' petition now before us, to enter. (As we read section 405.35, they will have at least 20 days to do so

---

[8] There is no *automatic* stay pursuant to section 916 when an appeal is filed in a case which has been used to support a lis pendens. (See *United Professional Planning, Inc., v. Superior Court* (1970) 9 Cal.App.3d 377, 385 [88 Cal.Rptr. 551] [trial court had jurisdiction to grant motion to expunge lis pendens after notice of appeal was filed].) Of course, if a stay *were* automatic, it would completely circumvent the Legislature's intent in enacting section 405.32, because merely filing an appeal, no matter how meritless, would automatically keep the lis pendens in place.

after service of the notice of the order expunging the lis pendens.[9]) That is no less than the Buyers would have had if the proper (post-1992) standard had been followed in the first place.

## IV.   DISPOSITION

The petition is meritorious. Let a peremptory writ of mandate issue directing the superior court to vacate its order denying the Sellers' motion to expunge and substituting in its stead a new order granting the motion.

Each party shall bear its own costs in this proceeding.

Rylaarsdam, J., and Ikola, J., concurred.

A petition for a rehearing was denied January 4, 2005, and the petition of real parties in interest for review by the Supreme Court was denied February 16, 2005.

---

[9] Section 405.35 provides in pertinent part: "No order expunging a notice of pendency of action shall be effective, nor shall it be recorded in the office of any county recorder, until the time within which a petition for writ of mandate may be filed pursuant to Section 405.39 has expired." In related pertinent part, section 405.39 provides, "The petition for writ of mandate shall be filed and served within 20 days of service of written notice of the order by the court or any party. The court which issued the order may, within the initial 20-day period, extend the initial 20-day period for one additional period not to exceed 10 days."