[Nos. C052156, C052395. Third Dist. Apr. 16, 2007.]

AMALGAMATED BANK, as Cotrustee, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
CORINTHIAN HOMES et al., Real Parties in Interest.

**COUNSEL**

Morgan, Lewis & Bockius, Thomas M. Peterson, Rollin B. Chippey II, Diane L. Webb and Umung Varma for Petitioners.

No appearance for Respondent.

Freidberg & Parker, Edward Freidberg, Thomas H. Kawaii; Wagner Kirkman Blaine Klomparens & Youmans, Belan K. Wagner; Law Office of Elias D. Bardis and Elias D. Bardis for Real Parties in Interest.

**OPINION**

**BUTZ, J.**—In this case, we are confronted with the knotty question of what an appellate court should do about an order expunging a lis pendens where a real property claimant is appealing from an adverse judgment in the trial court and files a writ petition asking the Court of Appeal to stay the expungement until the appeal is decided. The issue is complicated by a drastic change in lis pendens law enacted in 1992.

The new law places the burden on the party filing a lis pendens to show the "probable validity" of his or her real property claim *before trial*, but says nothing about what standard the trial court should apply when confronted

with a motion to expunge the lis pendens after the claimant suffers an adverse judgment. Moreover, while the new legislation permits the aggrieved party to seek appellate review of an expungement order by petition for writ of mandate, it does not tell the reviewing court what standard to apply in deciding whether to issue the writ.

We shall conclude that the standard for deciding whether to issue a writ of mandate vacating a postjudgment expungement order is whether a petitioner's real property claim has probable validity. We do this by assessing whether the petitioner has made out a prima facie case for reversal of the judgment, based on the record in the trial court and the arguments of the parties. This "mini-review" however, is *not* equivalent to a full-scale resolution of the underlying appeal.

Applying this standard, we find no probable validity to petitioners' claim. This determination is based primarily on our conclusion that petitioners herein have no standing, under the statutory scheme, to set aside a judicial foreclosure on the ground of irregularities in the conduct of the sale. We therefore decline to interfere with the trial court's expungement order, and shall deny the writ.

## BACKGROUND

This petition for writ of mandate was brought after Sacramento County Superior Court Judge Loren McMaster issued an order granting the motion of real parties in interest Corinthian Homes (Rancho Murieta), L.P., RKB Communities, LLC, Bruce Palmbaum, and Winncrest Homes, Inc. (collectively Palmbaum) to expunge a lis pendens filed by petitioners Amalgamated Bank, formerly First Interstate Bank, as corporate cotrustee for Pension Trust Fund for Operating Engineers, and Pension Trust Fund for Operating Engineers (collectively PTF). PTF filed an action to set aside a judicial foreclosure sale conducted by the Sacramento County Sheriff of 57 acres of undeveloped land in the southern part of the county. The property was sold pursuant to a judgment of foreclosure against the judgment debtor Winncrest Homes, Inc. (Winncrest). Corinthian Homes is a development corporation formed by Palmbaum, who was the successful and only bidder at the foreclosure sale. Palmbaum bought the entire parcel at the sheriff's sale for $2,000. Judge McMaster ordered the lis pendens expunged after another judge granted summary judgment in favor of Palmbaum. PTF now seeks relief from the expungement order.

## FACTUAL AND PROCEDURAL HISTORY

PTF held a security interest in the real property (commonly known as parcel 007) owned by Winncrest. Winncrest ceased making payments on the

property in 1993. PTF commenced an action against Winncrest for judicial foreclosure of parcel 007 and others. The trial court entered judgment allowing a sale of the property with a right of redemption, specifying the amount of the debt as slightly more than $17 million. Winncrest appealed, and this court affirmed the judgment in 2003. (*First Interstate Bank v. Winncrest Homes, Inc.* (July 25, 2003, C035434, C036722) [nonpub. opn.].).

As judgment creditor, PTF requested that the Sacramento County Sheriff issue a writ of sale to execute upon parcel 007 and sell it to the highest bidder. A public auction was scheduled for February 24, 2004, at 10:00 a.m. Palmbaum arrived there with $10 million in available funds. The property was worth approximately $6.5 million, and PTF intended to place an opening bid of $6 million.

The sheriff commenced the sale around 10:00 a.m. (the exact time is the subject of intense dispute) and Palmbaum submitted an opening bid of $2,000. Palmbaum's bid turned out to be the only bid because PTF's designated bidders got stuck in traffic on the morning of February 24 on their way from the Bay Area to Sacramento, arriving at the auction room sometime after 10:00 a.m. After the sheriff's gavel fell confirming a sale to Palmbaum for $2,000, the late-arriving bidders vociferously objected, demanding that the sale be rescinded. The officer replied that bidding was closed and the property had been sold to Palmbaum.

PTF filed the instant action to set aside the foreclosure sale, cancel the sheriff's deed and restrain Palmbaum from disposing of the property. PTF also recorded a notice of lis pendens, effectively tying up parcel 007 during the pendency of the lawsuit. Although it had a year in which to do so, Winncrest did not exercise its right of redemption. The one-year redemption period expired on February 25, 2005.

Following extensive discovery, Palmbaum filed a motion for summary judgment. (Code Civ. Proc., § 437c.)[1] In granting the motion, Judge Jeffrey Gunther found that PTF was barred from setting aside the sale, since (1) section 701.680, subdivision (a) provides that a judicial foreclosure sale pursuant to article 6 "may not be set aside for any reason," a statute that abolished equitable grounds for rescission; (2) the sheriff conducted the sale according to law and without irregularities; (3) Winncrest did not exercise its right of redemption; (4) an action to set aside a foreclosure sale for irregularities may be commenced by the judgment debtor only if the purchaser was the judgment creditor (neither of which applied here); and (5) the sheriff did not have discretion to postpone the sale absent a joint request from both the judgment debtor and judgment creditor, which did not occur here.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

PTF filed a notice of appeal from the summary judgment. That appeal is pending in this court (C050901). Several months after the judgment was entered, Palmbaum made a motion to expunge the lis pendens. Judge McMaster issued a tentative ruling granting the motion and directing Palmbaum to prepare a formal order. At that point, PTF filed the first of two petitions for writ of mandate (*Amalgamated Bank v. Superior Court* (C052156)).[2] The stated primary purpose of the petition was to "preserve this court's jurisdiction" by staying the expungement order. PTF claimed that if the lis pendens were allowed to be expunged, Palmbaum would be able to sell the property to a third party, thus rendering the summary judgment appeal essentially moot.

We issued two alternative writs (C052156 & C052395) and a stay of the expungement order, pending our resolution of the petition.

## DISCUSSION

### I. A Stay of the Expungement Order Was Unnecessary

██ Section 405.39 provides that an order expunging a lis pendens is not appealable but is reviewable upon petition for writ of mandate filed within 20 days of service of written notice of the order, during which time the expungement order may not be recorded. PTF timely filed a petition here. Section 405.35 provides in pertinent part: "*No order* expunging a notice of pendency of action *shall be effective*, nor shall it be recorded in the office of any county recorder, until the time within which a petition for writ of mandate may be filed pursuant to Section 405.39 has expired. No order expunging a notice of pendency of action shall be effective, nor shall it be recorded in the office of any county recorder, after a petition for writ of mandate has been timely filed pursuant to Section 405.39, *until the proceeding commenced by the petition is finally adjudicated.*" (Italics added.) Therefore, the expungement order is stayed *by statute* until our final disposition of this writ petition. A stay of the expungement order was superfluous.[3]

---

[2] PTF later admitted that it may have jumped the gun by filing its first petition *before* entry of a formal expungement order. However, PTF filed a second petition (C052395) after a formal order was entered, and there is no longer any dispute that this court has proper writ jurisdiction. We granted a motion to consolidate these two petitions for writ of mandate (hereafter referred to as the petition).

[3] In our order staying the expungement order we noted that the order was stayed by operation of law, but clarified that the stay would extend to that portion of the order requiring PTF to pay Palmbaum's attorney fees.

## II. Evolution of the Lis Pendens Statutes

### A. *Pre-1992 Law and* Peery

██ A party who asserts a claim to real property can record a notice of lis pendens, which serves as notice to prospective purchasers, encumbrancers and transferees that there is litigation pending that affects the property. (5 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 11:134, p. 337 (Miller and Starr); Code Civ. Proc., § 405.20.) A lis pendens acts as a cloud against the property, effectively preventing sale or encumbrance until the litigation is resolved or the lis pendens is expunged. (Miller & Starr, *supra*, § 11:134, p. 337.)

Before 1992, a lis pendens was very easy to record and very difficult to remove. Under former section 409.1, as long as a lis pendens was filed for a "proper purpose and in good faith," the trial court could not remove it until the litigation was finally terminated against the party filing the lis pendens. (See *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 523–524 [174 Cal.Rptr. 694, 629 P.2d 495] (*Malcolm*); *Mix v. Superior Court* (2004) 124 Cal.App.4th 987, 992 [21 Cal.Rptr.3d 826] (*Mix*).)

In *Peery v. Superior Court* (1981) 29 Cal.3d 837 [176 Cal.Rptr. 533, 633 P.2d 198] (*Peery*), the California Supreme Court addressed the standard the trial court should apply when ruling on a motion to expunge *after* summary judgment has been granted against the claimant, and the judgment has been appealed. *Peery* ruled that the court should deny the motion (thus keeping the lis pendens on the property during the appeal) if the appeal presents a "substantial issue" for review. (*Id.* at pp. 844–845.) *Peery* thus reflects a judicial and legislative predisposition toward keeping the status quo if there is any reasonable chance the party recording the lis pendens might ultimately prevail.

### B. *1992 Legislation*

██ Lis pendens law was substantially revised in 1992. (See Stats. 1992, ch. 883, § 2, pp. 4100–4105.) The old "good faith and proper purpose" standard of section 409.1 was jettisoned in favor of section 405.32, which says: "In proceedings under this chapter, the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Section 405.3 defines "probable validity" as "more likely than not" that the real property claimant will prevail against the defendant in the action.

This represents a sea change in the law. Now a claimant must prove more than that he recorded the lis pendens in good faith and without ulterior

motives. He must make a showing that he is *likely to prevail on the merits*, in much the same fashion as one seeking an attachment must show the probable merit of the underlying lawsuit. (See §§ 481.190, 484.090, subd. (a)(2).)

The code comment following section 405.32 (Code Comment) explains that the lis pendens had evolved from a simple method of giving notice of a lawsuit into a de facto injunction against transferring or encumbering the property while litigation is in progress, without the procedural safeguards that normally attend the granting of injunctive relief. (See Code Com., 14A West's Ann. Code Civ. Proc. (2004 ed.) foll.§ 405.32, par. 2, p. 345.) The financial pressure created by a recorded lis pendens provided the opportunity for abuse, permitting parties with meritless cases to use it as a bullying tactic to extract unfair settlements.[4]

The Code Comment thus states that section 405.32 "is intended to disapprove *Malcolm*[, *supra*, 29 Cal.3d 518] and other cases which have held that the court on a motion to expunge may not conduct a 'minitrial' on the merits of the case. *This section is intended to change California law and to require judicial evaluation of the merits*." (Code Com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.32, par. 3, p. 346, italics added.)

### C. Mix *and* Behniwal

While the 1992 revision of the law left no doubt that the recorder of a notice of lis pendens now has the burden of persuading the court that he will likely prevail when resisting an expungement motion, the language of section 405.32 is manifestly targeted at motions to expunge *before trial* (property claimant must prove by a "preponderance of the evidence" the "probable validity" of the claim), not expungement motions made after judgment has been entered and while an appeal is pending. As was the case under the former statutes, the Legislature failed to articulate a standard for ruling on a motion to expunge a lis pendens made *after judgment against the claimant*.

It took 12 years for such a case to be decided. In *Mix, supra*, 124 Cal.App.4th 987, the buyer sued the seller for specific performance and recorded a lis pendens against the property. In a bench trial, the court agreed with the seller. After winning the judgment, the seller moved to expunge the

---

[4] A report on the proposed legislation by the Real Property Law Section of the State Bar observed that a lis pendens was called "the 'nuclear weapon' of property disputes, because the practical effect of filing a lis [pendens] is to make the affected property unmarketable as long as the lis [pendens] remains of record. Moreover, a li[s] pendens can be filed without a prior judicial review, and it is at present very difficult to 'expunge' (i.e., remove) a lis [pendens]." (Assem. Com. on Judiciary, rep. on Assem. Bill No. 3620 (1991–1992 Reg. Sess.), as amended Apr. 29, 1992, p. 4.)

lis pendens before the time for appeal had expired. The trial court denied the motion, applying pre-1992 case law that held a lis pendens should not be expunged unless appellate review would be "patently unmeritorious." (*Id.* at pp. 990–991 & fn. 5.)

The *Mix* court issued a writ commanding the trial court to expunge the lis pendens. The court concluded that the 1992 legislation abrogated the *Peery* "substantial issue for review" standard. The " 'probable validity' " test governs instead. (*Mix, supra,* 124 Cal.App.4th at p. 994.) The court continued that while "[t]he phrase 'probable validity' in section 405.32 was obviously written from the perspective of a trial court judge trying to forecast, at some point before trial, the 'probable' outcome in the *trial* court[,] [t]he statute is silent as regards the context of [a] trial court judge trying to forecast the probable outcome in the *appellate* court." (*Id.* at p. 995.) It would be anomalous, *Mix* declared, if the test postjudgment were to be less rigorous than the test before trial—after all, the court need not forecast the "probable validity" of the case, since it has already entered a judgment adjudicating the merits. (*Ibid.*) *Mix* therefore held that a trial court confronted with an expungement motion after judgment against the claimant may deny the motion only if the court believes that its own decision will be reversed on appeal. Since there was no indication the trial judge believed this to be the case, it should have granted the expungement motion. (*Id.* at p. 996.)

In a section entitled "Harsh Results Can Be Tempered," the *Mix* court purported to offer a consolation prize to the claimant who loses in the trial court, files an appeal and faces an expungement motion that is virtually certain to be granted. *Mix* noted that expungement orders are reviewable by writ and that appellate courts can issue stays pursuant to California Rules of Court, former rule 56(c)(4)[5] when they receive writ petitions. The court then pointed out that the appellate court could stay the expungement order (effectively keeping the lis pendens on the property) *if* it concluded there was probable validity to the appeal. *Mix* therefore ordered the trial court to expunge the lis pendens, while inviting the buyer to file a writ petition and request a stay of the expungement order. (*Mix, supra,* 124 Cal.App.4th at pp. 996–998.)

The outcome in the sequel to *Mix, Behniwal v. Superior Court* (2005) 133 Cal.App.4th 1048 [35 Cal.Rptr.3d 162] (*Behniwal*), is truly ironic. Accepting *Mix*'s invitation, the buyer filed a petition for writ of mandate and asked the appellate court to vacate the expungement order or alternatively to stay it by writ of supersedeas until the appeal was decided. (*Id.* at p. 1049.) But instead of embarking on the intermediate "probable validity" review, the appellate

---

[5] All rule references are to the California Rules of Court. Effective January 1, 2007, rule 56 was renumbered to rule 8.490.

court simply *expedited the appeal* and decided its merits. Lo and behold, the buyer's appeal had merit, the judgment had to be reversed, and the appellate court wound up vacating its own order directing the expungement. (*Id.* at p. 1050.)

## III. Expungement Orders Under the 1992 Legislation

### A. *The Standard of Review in the Trial Court*

In ruling on the postjudgment expungement motion here Judge McMaster, following *Mix* and "declin[ing] to forecast the reversal of [his] own decision on appeal," granted the motion to expunge. PTF contends that *Mix* was wrongly decided. Because the 1992 legislation was silent about forecasting the probable validity of a result in the *appellate court*, PTF reasons, the *Peery* standard (appeal presents substantial issue for review) should survive. PTF points out that while the Code Comment declares the Legislature's intent to overrule *Malcolm*, the comment said nothing about overruling *Peery*.

The argument fails. *Malcolm* and *Peery* were decided within three months of each other. The main difference between the two cases is that *Malcolm* arose in the context of a pretrial expungement motion, while *Peery* was decided after the claimant suffered a summary judgment and his appeal was pending. In *Peery*, the state Supreme Court noted that prior to trial, the "sole issue" was the subjective intent of the recording party; and thus a "minitrial" on the merits was inappropriate. (*Peery, supra,* 29 Cal.3d at p. 844, citing *Malcolm, supra,* 29 Cal.3d at p. 529.)

Looking at the expungement motion in a postjudgment context, *Peery* observed that in some instances " 'the patent lack of merit of a lawsuit may strongly suggest that the plaintiff *has not filed the action for a proper purpose or in good faith.*' " (*Peery, supra,* 29 Cal.3d at p. 844, italics added, quoting *Malcolm, supra,* 29 Cal.3d at p. 528.) Thus, *Peery* declared, "although expungement will often be appropriate after summary judgment, the appellant should be given the opportunity to prove that the summary judgment raises substantial issues for appellate review *and to otherwise demonstrate his good faith.*" (*Peery, supra,* 29 Cal.3d at p. 846, italics added.)

A careful reading of the discussion in *Peery* compels the conclusion that the rule it fashioned was rooted in the old "good faith/proper purpose" test that predated the 1992 legislation. But the Code Comment makes absolutely clear that that standard is no longer relevant.[6] Therefore, when the Code

---

[6] In the words of the Code Comment: "Questions of subjective state of mind are more appropriate to criminal law notions of moral culpability than to resolution of real property

Comment said that the legislation was intended to overrule *Malcolm* "and other cases," we have no difficulty concluding that *Peery* is one of those "other cases" targeted for obsolescence.

██ We agree with *Mix* that on a motion to expunge a lis pendens after judgment against the claimant and while an appeal is pending, the trial court must grant the motion unless it finds it more likely than not that the appellate court will reverse the judgment.[7] Judge McMaster did not err in following *Mix* and granting the expungement motion.

### B. The Standard of Review in the Appellate Court

Having determined that the trial court committed no error in *granting* the expungement, we are left with the novel question remaining to be decided in this proceeding: By what standard should an appellate court decide whether to issue a writ of mandate relieving the losing real property claimant from the effect of an expungement order while his appeal is pending?

The procedural posture of this case is analogous to the one the appellate court faced in *Mix* and *Behniwal*, except that here the trial court granted summary judgment instead of deciding the case after trial on the merits. However, *Mix* and *Behniwal* do not pose fully satisfying solutions.

First, by touting the prospect of asking the appellate court to issue a stay while it considers the petition, the *Mix* court overlooked the fact that a stay upon the filing of a petition for writ of mandate is *automatic*—under section 405.35, an expungement order is not effective "until the proceeding commenced by the petition is finally adjudicated."

Second, although it implied that a "probable validity" standard should govern whether to grant the losing claimant's writ petition, the *Behniwal* court avoided the issue by forging ahead and deciding the merits of the underlying appeal, thereby using a "certain validity" rather than a probable validity yardstick. (*Behniwal, supra,* 133 Cal.App.4th at p. 1050 ["As far as we are concerned, [the real property claim] is not just 'probably' valid, it is *definitely* valid"].)

Having rejected PTF's invitation to follow the obsolete *Peery* standard of "substantial issue for review," we face a statutory lacuna that we must fill

---

disputes. The provisions regarding proper purpose, good faith and subjective state of mind are superseded . . . by the new requirement that the claimant objectively establish the probable validity of the real property claim." (Code Com., 14A West's Ann. Code Civ. Proc., *supra,* foll. § 405.32, par. 6, p. 346.)

[7] We use the word "judgment" rather than *Mix*'s terminology "[the trial court's] *own decision*" (*Mix, supra,* 124 Cal.App.4th at p. 996) because, in some cases, the underlying real property claim will have been decided by a jury rather than by way of pretrial motion or a bench trial.

with our own divination of legislative intent. Although the Legislature failed to create a statutory standard, the 1992 legislation left behind enough clues to enable us to find our way to the coveted portal.

In section 405.32, the Legislature told the trial court exactly what to do when faced with an expungement motion *before trial*: Deny the motion unless "the claimant [establishes] by a preponderance of the evidence the probable validity of the real property claim." We know from the Code Comment that this section contemplates a "minitrial" on the merits in an abbreviated proceeding that parallels the procedure long used by a trial court in deciding whether to issue a writ of attachment or possession, or to grant a preliminary injunction. (See Code Com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.32, pars. 3 & 4, p. 346, citing §§ 484.090, 512.060; *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].)

Section 405.39 tells us the aggrieved claimant should have an opportunity for appellate review of the trial court's expungement ruling by petition for writ of mandate, but not by way of appeal. The Legislature also granted the loser a temporary reprieve by mandating that the trial court's order be stayed until the writ petition is finally resolved. (§ 405.35.)

PTF asserts that we must conduct a "searching assessment of the merits for purposes of determining whether [the] lis pendens should remain in place pending appeal." We disagree. In our mind, a searching examination of the merits is hardly distinguishable from resolving the appeal itself. Processing an appeal takes time. And, as long as the lis pendens remains, the passage of time prejudices the successful property owner who has secured the expungement order. As our sister court in the Court of Appeal, First Appellate District, Division Five, noted, "the apparent legislative purpose for making an order expunging a notice of lis pendens reviewable only by writ was to expedite the review process so as not to tie up title conveyances. If we were to wait for an appeal to be perfected on the order removing the lien so as to decide the two matters together, the delay would defeat the purpose of speedy writ review." (*Harold S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319 [130 Cal.Rptr.2d 641] (*Harold S. Wright*).)

By enacting a significant overhaul of lis pendens law, the Legislature has signaled its intent that, unless a real property claim is likely to succeed in court, a lis pendens should not remain in place while the litigation wends its way to final disposition. Applying the "probable validity" standard in the Court of Appeal as well as the trial court best serves that goal. We therefore conclude that, in deciding a writ petition under section 405.39 after judgment and pending appeal, an appellate court must assess whether the underlying real property claim has "probable validity" as that term is used in section

405.3, i.e., whether it is more likely than not the real property claim will prevail at the end of the appellate process. This is, in fact, the same standard the appellate court applied in *Harold S. Wright*, although in that case the court was deciding whether to grant mandamus relief from a pretrial, rather than a postjudgment, expungement order. (*Harold S. Wright, supra,* 106 Cal.App.4th at pp. 318, 326.)

In *Mix*, the court declared that an appellate court deciding *whether to issue a stay* of an expungement order pending resolution of the appeal should do so only in "those cases where the miscarriage of justice may so radiate from the record that the appellate court, at least, is willing to prophesy ultimate reversal . . . at the beginning of the appellate process." (*Mix, supra,* 124 Cal.App.4th at p. 997.) We find this formulation useful not to the *issuance of a stay*, which is automatic by operation of law, but to the resolution of the writ petition itself.

■ Where an unsuccessful real property claimant appeals a judgment of the trial court and petitions for interim mandamus relief from an expungement order in the appellate court, we will conduct prima facie review of the probable success of the underlying appeal. While this might place us in the somewhat awkward position of attempting to forecast our own resolution of the underlying appeal, we must let the chips fall where they may. It is not unheard of for a trial court to issue a preliminary injunction or a pretrial attachment, only to conclude, when all is said and done, that the defendant should prevail in the end. Such a result should not be considered heresy simply because it occurs in a court of higher jurisdiction.

## IV. Application of the Standard to This Petition

In order to resolve the petition, we return to the evidence adduced on the motion for summary judgment. The evidence showed there was a sheriff's auction of parcel 007 scheduled for 10:00 a.m., pursuant to a judicial foreclosure sale noticed by judgment creditor PTF and approved by its attorneys. Sergeant Paul Spreitzer of the Sacramento County Sheriff's Department, who calibrated his watch biannually according to the United States Naval Observatory's atomic clock, started the auction at 10:01 a.m. according to his watch.

Although they were stuck in a traffic jam on their way to the sale, PTF's representatives did not contact the sheriff to request a postponement of the sale. Neither of PTF's representatives was present at the start of the sale.

After Sergeant Spreitzer opened the auction, Palmbaum submitted a bid of $2,000. This bid was accepted as the last and highest bid. After Spreitzer

struck the table signifying the property was sold to Palmbaum, PTF's representatives entered the room, protesting that they had been delayed in traffic and stating their desire to place a bid. Spreitzer replied that the sale was over and the property had been sold to Palmbaum. The sheriff issued Palmbaum a "Certificate of Sale" two days later. The judgment debtor, Winncrest, did not exercise its right of redemption within the statutory time limit.

■ PTF brought this action to set aside the sale based on certain irregularities and on equitable grounds. However, section 701.680, subdivision (a) provides: "Except as provided in paragraph (1) of subdivision (c), a sale of property pursuant to this article is *absolute* and may *not be set aside for any reason*." (Italics added.) Subdivision (c)(1) permits a sale to be set aside for irregularities, but only where the purchaser is the *judgment creditor* and the motion is made within 90 days *by the judgment debtor* or his or her successor in interest.

■ As stated in Miller and Starr, in order to encourage fair bidding and the finality of sales, the Legislature has provided that upon payment of the purchase price, a sheriff's sale to a third party is absolute, subject only to the right of redemption, and may not be set aside. (4 Miller & Starr, *supra,* § 10:232, p. 765.)

■ Here, the property was sold to a third party. By statute, only the judgment debtor can set aside the sale for irregularity and only where the purchaser was the judgment creditor. By purchasing the property at the sheriff's auction, Palmbaum became fee owner, subject only to the right of redemption. Because Winncrest did not bring an action to set aside the sale or exercise its right of redemption within the statutory timeframes, Palmbaum's title to the property has been perfected. There is simply no room in the statutory scheme for a judgment creditor (for whose benefit the foreclosure sale was held in the first place) to deprive a third party purchaser at a judicial foreclosure sale of his interest in the property by bringing an action to set aside the sale.

PTF responds that section 701.680 does not apply to foreclosure sales *with the right of redemption.* According to PTF, "[r]eal property foreclosure proceedings with right of redemption are subject to their own separate statutory scheme (see § 726[, subd.] (e))." (Fn. omitted.) Because a sale with a right of redemption is not "absolute," PTF claims, judgment creditors may still bring equitable actions to rescind foreclosure sales. We disagree.

■ The very statute cited by PTF, section 726, subdivision (e) provides that "[i]f a deficiency judgment is not waived or prohibited, the real property . . . *shall be sold subject to the right of redemption as provided in*

*Sections 729.010 to 729.090, inclusive.*" (Italics added.) Section 729.010, subdivision (b) provides, with inapplicable exceptions, that "[*i*]*f the property is to be sold subject to the right of redemption,* the sale is governed by Section 716.020 . . . ." (Italics added.) Section 716.020, subdivision (b) provides that, to execute a writ of sale, the levying officer shall, except as ordered otherwise by the court, "give notice of sale *and sell* the property described in the writ of sale *in the manner prescribed by Article 6 (commencing with section 701.510)* of Chapter 3 of Division 2 for giving notice and selling under a writ of execution." (Italics added.) Found within article 6 is section 701.680, the very statute declaring that foreclosure sales described in article 6 are "absolute and may not be set aside for any reason." Words in a statute are to be interpreted by referring each phrase to its appropriate object. (*Sargent v. Shumaker* (1924) 193 Cal. 122, 127–128 [223 P. 464].) Thus, the self-contained interplay of foreclosure statutes demonstrates that the Legislature intended section 701.680 to apply to judicial foreclosure sales, *including* those subject to a right of redemption.

Since, by virtue of section 701.680, PTF has no standing to bring an action to rescind the sale, the remainder of its arguments for reversal do not impress, as they all importune reasons for undoing a sale to a third party. PTF, for example, assails various details of the manner in which the sheriff conducted the sale, and points to circumstantial evidence allegedly showing collusion between Palmbaum and the judgment debtor Winncrest. But the complaint does not seek damages from the sheriff for negligently conducting the sale, or from Palmbaum and Winncrest based on a conspiracy to deprive PTF from recovering the full amount of the debt. It seeks to set aside the *foreclosure sale,* a sale noticed and approved by PTF's attorneys. If successful, this action would have the effect of defeasing a third party purchaser of his interest in the property. For the reasons we have noted, that result appears to be statutorily barred.

### V. Final Thoughts

Upon receiving a petition for writ of mandate seeking postjudgment relief from an expungement order while the appeal is pending (§ 405.39), our task is to determine whether the claim has "probable validity" as defined in section 405.3. In practice, this will mean making a judgment call about the probable success of the real property claim on appeal. Since this is the first published case that applies such a standard to a postjudgment expungement order and we issued an alternative writ to settle this important question, this decision includes a statement of reasons. However, this disposition will be the exception rather than the rule.

 Article VI, section 14 of the California Constitution provides that "[d]ecisions of the Supreme Court and courts of appeal that determine causes

shall be in writing with reasons stated." However, it is "settled law that an appellate court's action denying without opinion a petition for a writ of mandate or prohibition is not the determination of a 'cause' requiring oral argument and a written opinion. . . . Only when the appellate court issues an alternative writ or order to show cause does the matter become a 'cause' which is placed on the court's calendar for argument and which must be decided 'in writing with reasons stated.' " (*People v. Medina* (1972) 6 Cal.3d 484, 490 [99 Cal.Rptr. 630, 492 P.2d 686], citing *Funeral Dir. Assn. v. Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104, 106 [136 P.2d 785].) Thus, if we determine that a postjudgment section 405.39 petition fails to make out a prima facie case of entitlement to relief, it will be disposed of by summary denial, without a statement of reasons. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 893–894 [12 Cal.Rptr.2d 728, 838 P.2d 250] (*Kowis*).)

We hasten to add that summary denial of a writ petition does not constitute law of the case. (*Kowis, supra,* 3 Cal.4th at p. 897; *Countrywide Home Loans, Inc. v. Superior Court* (1997) 54 Cal.App.4th 828, 831 [62 Cal.Rptr.2d 899].) Hence, we may summarily deny a writ without being hamstrung into deciding the appeal against the real property claimant. A writ denial will, however, allow the expungement order to go into effect, thereby removing the lis pendens as a cloud on the real property. But that is a consequence in harmony with the Legislature's purpose in enacting the 1992 amendments. As stated in *Mix,* "the Legislature has declared that it intended, when it adopted section 405.61, to 'provide for the absolute and complete free transferability of real property after the expungment [*sic*] or withdrawal of a notice of pendency of action.' [Citation.] Thus, given a choice between two systems, (1) where property can be readily freed up for sale after trial court litigation or (2) where property will continue to be tied up for a long period pending an appeal if a claimant can come up with some nonfrivolous argument on which to base that appeal, it is apparent that the Legislature chose free transferability of the property by the prevailing property owner as the preferred option." (*Mix, supra,* 124 Cal.App.4th at p. 994.)

## DISPOSITION

Our prior stay of the trial court's expungement order is lifted and the alternative writs are discharged in appellate case Nos. C052156 and C052395. The petition for writ of mandate is denied. Real parties in interest shall recover their costs in this consolidated writ proceeding. (Rule 8.490(m)(1).)

Scotland, P. J., and Robie, J., concurred.

A petition for a rehearing was denied May 16, 2007, and petitioners' petition for review by the Supreme Court was denied August 8, 2007, S153039.