Filed 1/19/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| J&A MASH & BARREL, LLC,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>    Respondent;<br><br>TOWER THEATER PROPERTIES,<br><br>    Real Party in Interest. | F083104<br><br>(Super. Ct. No. 21CECG00440)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Rosemary T. McGuire, Judge.

Lang, Richert & Patch**,** Stan D. Blyth, Kimberly L. Mayhew; Tuttle & McCloskey and Craig R. Meredith for Petitioner.

No appearance for Respondent.

LaMontagne & Amador, Eric A. Amador; Law Office of David M. Camenson, David M. Camenson; Coleman & Horowitt, C. Fredrick Meine III for Real Party in Interest.

-ooOoo-

Petitioner J&A Mash & Barrel, LLC (J&A), a tenant of real party in interest, Tower Theater Properties, Inc. (TTP), alleges TTP failed to honor its right of first refusal when TTP entered an agreement to sell the property to a third party, Adventure Church. To protect its rights, J&A initiated legal action in the Fresno County Superior Court and filed a notice of pendency of action, commonly known as a lis pendens, to provide notice to interested parties of the litigation.[1] TTP moved to expunge the lis pendens, which the trial court granted. J&A brought this petition for writ of mandate challenging the court's ruling.

The order expunging the lis pendens was flawed in several respects and, therefore, we grant the writ and direct the trial court to vacate the order and enter a new order denying the motion to expunge the lis pendens. J&A, as the prevailing party on the motion to expunge and in this writ proceeding, is entitled to recover its reasonable attorney's fees and costs pursuant to section 405.38. Therefore, we also direct the trial court to hold further proceedings to calculate and award those attorney's fees and costs.

## FACTS

J&A is the owner of Sequoia Brewing, a restaurant and brewery operating in Fresno and a tenant of TTP. The brewery is located in a stand-alone commercial building (brewery premises), but the building is one part of a larger parcel of real estate (Tower Theatre parcel). The Tower Theatre parcel covers nearly an entire city block and the most prominent structure on the property is the Tower Theatre. Originally constructed in 1939, the theater is an historically and architecturally significant structure and the focal

---

[1] California's statutory scheme governing lis pendens is set forth in Code of Civil Procedure sections 405 through 405.61. The statute uses the term " '[n]otice of pendency of action' " (Code Civ. Proc., § 405.2) rather than the Latin term "lis pendens," which means "[a] pending lawsuit." (Black's Law Dict. (8th ed. 2004) p. 950.) Further statutory references are to the Code of Civil Procedure, unless otherwise stated.

point of the surrounding commercial district.[2] The brewery premises is located on the Tower Theatre parcel and, therefore, any attempt to sell the Tower Theatre parcel necessarily involves the brewery premises.

J&A purchased Sequoia Brewing from the prior owners on March 11, 2020, and the lease of the brewery premises was assigned to J&A. The lease, including the 2017 amendment and extension, and the 2020 assignment to J&A were approved by the lessor, TTP, and signed by Laurence Abbate in his capacity as chief financial officer for TTP. The amended lease contained a right of first refusal allowing J&A to purchase the brewery premises should TTP offer to sell the premises to a third party.

In late 2020, the owners of J&A started hearing media reports and rumors of a pending sale of the Tower Theatre to a church. The first actual attempt to notify J&A of the sale of the theater occurred on January 12, 2021. The owners of J&A received a letter from TTP indicating it was planning on concluding the sale of the Tower Theatre parcel in three days and requested J&A waive the right of first refusal contained in the lease. The letter stated J&A had not exercised its right to purchase the brewery premises, and therefore the option to do so had lapsed. Since the owners of J&A had never previously been provided notice of the sale and had never agreed to waive the right, they refused to sign the letter.

Two days later, in a letter dated January 14, 2021, TTP's counsel informed J&A of the sale of the property to trigger the 12-calendar-day period described in the lease for J&A to provide notice of its intent to exercise the right of first refusal. The letter did not state a price for the brewery premises, nor did it provide information regarding the sales

---

[2] The court sua sponte takes judicial notice of the general historical and architectural characteristics of the Tower Theatre described in its historic designation description. (See <http://historicfresno.org/nrhp/tower.htm> [as of 1/14/22]; Evid. Code, § 452, subd. (h) ["Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."].)

3.

price of the entire Tower Theatre parcel. J&A responded to TTP on January 25, 2021. It noted TTP initiated the sale of the property without first providing notice as required by the lease agreement, and TTP was required to provide J&A the purchase price from the third party to allow it to determine a matching offer price for the brewery premises as contemplated under section 36(g) of the lease.

On January 29, 2021, counsel for TTP and J&A spoke by phone. TTP counsel represented the sale price of the Tower Theatre parcel was $6.8 million, and TTP was willing to offer to sell the brewery premises for $2.5 million. Believing the prices quoted by TTP were "ludicrously high," J&A counsel stated his clients would never pay that amount for the property.

On February 11, 2021, TTP e-mailed J&A a copy of a subordination and consent agreement prepared by the lender for the buyer, Adventure Church, Inc. (Adventure Church), indicating J&A's lease would be subordinate to the deed of trust and rights of the lender. J&A responded on the same date with a letter to Adventure Church's lender stating its position that the sale could not go through and it intended to imminently file legal action to protect its rights.

## PROCEEDINGS

### *Litigation and Lis Pendens*

On February 16, 2021, J&A filed a complaint against TTP in Fresno County Superior Court, quickly followed by a first amended complaint the next day (the FAC). The FAC alleged claims for: (a) breach of contract/specific performance, (b) declaratory relief, (c) preliminary injunction, (d) fraudulent concealment, and (e) tortious interference with contract.

After the FAC was filed, a series of letters were exchanged by the parties. On February 18, 2021, TTP's counsel informed J&A he had spoken with Adventure Church and its lender regarding determining a price for the brewery premises. Counsel explained, "I believe leaving that calculation [i.e. the purchase price of the brewery

4.

premises] up to the analysis of the lender would yield an impartial and wholly justifiable amount. The lender has informed us that the lender is willing to lend a certain amount of money towards the purchase price if the entire property is used as security. The lender also informed us that the lender is in essence willing to lend $1,268,000 less if the Brewery Parcel is not part of the collateral. Therefore, the release price the lender will except [*sic*] for removal of the Brewery Parcel is [$1,268,000.00]." Although TTP was under the belief the time to exercise the right to purchase had already lapsed, it provided J&A an extension until March 5, 2021, to provide notice of its acceptance.

J&A responded the next day. It explained that under the terms of the lease it was entitled to purchase the brewery premises for a price matching the third party offer but it was impossible to exercise its right without knowing the purchase price of the Tower Theatre parcel. It further noted the price determined by Adventure Church's lender did not necessarily correlate to the actual purchase price. TTP responded on February 23, 2021, again setting forth the offer to sell the brewery premises at the unilaterally set price of $1.268 million and again extended the deadline to March 10, 2021.

On February 22, 2021, J&A caused a notice of pendency of action and related proof of service (the lis pendens) to be recorded with the Fresno County Recorder under section 405.20. The lis pendens referred to J&A's complaint and FAC and stated the pleadings alleged a real property claim against a portion of the Tower Theatre parcel. The proof of service stated a copy of the lis pendens had been served by certified mail on "Laurence Abbate, Agent for Service," of TTP at 815 East Olive Avenue, Fresno and "Mandy Flores, Agent for Service" of Adventure Church. The proof of service also stated David Camenson, as attorney for TTP, was served by electronic mail. J&A filed the lis pendens with the trial court on February 25, 2021.

At the same time J&A was attempting to perfect the lis pendens, it also filed an ex parte application for a temporary restraining order to halt the sale of the property. TTP filed an opposition to the application on February 23, 2021 along with a supporting

declaration from Laurence Abbate. In his declaration, Abbate stated he was the manager of TTP. He further described how Adventure Church approached TTP in August 2020 and expressed an interest in purchasing the Tower Theatre parcel. He explained TTP only developed the desire to sell the parcel after the preliminary considerations of the sale offer had been addressed and it was likely the sale would go through. At that time, TTP provided notice to J&A of the sale. Abbate's declaration did not explicitly state TTP owned the Tower Theatre parcel, but implied as much by referring to TTP's desire to sell the parcel.

Adventure Church also filed an opposition to the preliminary injunction on the same date as TTP, February 23, 2021. In support of the opposition, Anthony Flores, "Senior Pastor, CEO, and Chairman of the Board of Directors" of Adventure Church, provided a declaration. Flores stated Adventure Church leased space at the Tower Theatre, the theater was "one of four commercial businesses located within the 1.83-acre parcel currently owned by [TTP]," and Adventure Church was in the "late stages" of purchasing the Tower Theatre parcel from TTP.

*Discovery Obtained and Events Occurring After Recordation of the Lis Pendens*

On February 24, 2021, the trial court granted J&A's application for a temporary restraining order, ordered any further action relating to the sale of the property to cease, and set further briefing and a hearing for a preliminary injunction on March 17, 2021. On March 9, 2021, TTP counsel sent another letter to J&A stating the $1.268 million offer is "therefore the price to be used for purposes of Paragraph 36 of the lease" and if TTP was selling the brewery premises individually, it would be asking for a greater amount. However, "in the spirit of cooperation" TTP again offered J&A "the current opportunity to purchase the Brewery Parcel by matching the purchase price of $1,268,000 as set by the Church via its lender's appraiser." TTP provided J&A until March 24, 2021, to respond.

6.

After a hearing on March 17, 2021, the trial court denied J&A's request for a preliminary injunction. The court also ordered the lis pendens be expunged, stating J&A "has not shown by a preponderance of the evidence that it has a probability of prevailing on its claims" and citing section 405.32.

*First Writ of Mandate*

J&A sought relief from the trial court's denial of the preliminary injunction and expungement of the lis pendens by filing a petition for writ of mandate with this court, which was assigned case No. F082576. On March 30, 2021, we issued a temporary stay and ordered the terms of the temporary restraining order to remain in effect pending determination of the petition. After informal briefing, this court issued an alternative writ granting partial relief on April 23, 2021. The order directed respondent trial court to either vacate its ruling expunging the lis pendens or show cause why relief should not be granted. We noted respondent court had failed to hear the motion to expunge using the notice and timing requirements set forth in section 1005, subdivision (a)(11) and stated: "Although it was petitioner's burden to show the existence of a real property claim, it was not provided an opportunity to submit written briefing to the superior court prior to the hearing to support its contentions."

*Motion to Expunge and Order*

On April 26, 2021, the trial court vacated its ruling and set a briefing schedule and hearing date for TTP's motion to expunge the lis pendens.

In May 2021, TTP filed its motion to expunge the lis pendens accompanied by a supporting declaration of its attorney and a request for judicial notice. TTP argued the lis pendens should be expunged on procedural and substantive grounds. Asserting for the first time that Tower Theatre Productions, a California general partnership (TTP-GP), was the owner of record, TTP argued the lis pendens was procedurally defective and void because it was not served on the owner of record before its recordation. The substantive grounds raised by TTP was that J&A lacked evidence to establish the probable validity of

7.

its real property claim and, moreover, J&A had not even pleaded a viable real property claim. These grounds are described in detail later in this opinion.

In June 2021, when J&A filed its opposition to the motion to expunge, it had, through formal and informal discovery, obtained additional records relating to the sale of the Tower Theatre parcel to Adventure Church. J&A's arguments challenged both the procedural (improper service) and the substantive grounds raised in TTP's motion to expunge.

On July 7, 2021, the trial court issued an order setting forth its rulings on the parties' evidentiary objections and granting the motion to expunge the lis pendens on both procedural and substantive grounds. The court found that TTP-GP was the owner of record of the Tower Theatre parcel and TTP-GP had not been served with a copy of the lis pendens as required by statute. The court also concluded J&A did not carry its burden of showing its real property claims were probably valid. Finally, the court awarded TTP attorney fees in the amount of $4,589.95 based on its finding that J&A acted without substantial justification.

*Present Writ Proceedings*

On July 27, 2021, J&A filed the instant petition for writ of mandate with this court. After informal briefing was provided, this court issued an order to show cause on October 12, 2021. As briefing is complete and oral argument was held on January 12, 2022, the matter stands ready for adjudication.

## DISCUSSION

I.     LEGAL PRINCIPLES

       A.     Lis Pendens

"A party who asserts a claim to real property can record a notice of lis pendens, which serves as notice to prospective purchasers, encumbrancers and transferees that there is litigation pending that affects the property." (*Amalgamated Bank v. Superior*

8.

*Court* (2007) 149 Cal.App.4th 1003, 1011 (*Amalgamated Bank*).) "A lis pendens acts as a cloud against the property, effectively preventing sale or encumbrance until the litigation is resolved or the lis pendens is expunged." (*Ibid.*)

California's first statutory lis pendens procedure was enacted by the Legislature in 1851. (*Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1375.) In 1992, the Legislature substantially revised the lis pendens law by enacting the current statutory scheme, sections 405 through 405.61. (*Amalgamated Bank*, *supra*, 149 Cal.App.4th at p. 1011 [sea change in the law]; *Palmer*, *supra*, at p. 1377.) These statutes create "a balance in which the interests of third party litigant claimants, property owners, and prospective purchasers are protected by a somewhat complicated procedural scheme." (*The Formula Inc. v. Superior Court* (2008) 168 Cal.App.4th 1455, 1464.) "This balance is an integral part of the policy of the statutory scheme." (*Ibid.*) Therefore, when courts interpret its provisions, they must maintain that balance, effectuate the statute's objectives, and promote justice. (*Ibid.*)

"A party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged," commonly known as a lis pendens. (§ 405.20.) Such a party is a " '[c]laimant' " for purposes of the lis pendens statute. (§ 405.1.) Once recorded, any party with an interest in the property can move to expunge the lis pendens pursuant to the procedure set forth in section 405.30.

A comment to section 405.30 identifies four bases upon which expungement may be sought: (1) the lis pendens is void and invalid (§ 405.23), (2) the action as pleaded does not contain a real property claim (§ 405.31), (3) the claimant fails to establish the probable validity of the claim (§ 405.32), and (4) monetary relief provides an adequate remedy (§ 405.33). (Code com., 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 405.30, par. 2, pp. 336–337.)

A motion for expungement establishes a lis pendens is "void and invalid" for purposes of section 405.23 by showing service of the lis pendens did not comply with the

9.

requirements of section 405.22.  Sections 405.22 and 405.23 are discussed in part III.B. of this opinion.  Also, a motion for expungement may be based on the substantive grounds that the underlying action does not contain a real property claim (§ 405.31) or the real property claim lacks probable validity (§ 405.32).  The application of these statutory provisions is discussed in part IV. of this opinion.

Once an order granting or denying expungement has been issued by the trial court, the exclusive means for challenging that order is a petition for writ of mandate. (§ 405.39; *Amalgamated Bank, supra,* 149 Cal.App.4th at p. 1010.)  The writ petition must be filed within 20 days of service of the order.  (§ 405.39.)  A statutory stay automatically prevents the expungement of the lis pendens from occurring until after the writ proceeding is finally adjudicated.  (§ 405.35.)  Because the expungement order is statutorily stayed, there is no need for this court to issue interim relief.  (*Amalgamated Bank, supra,* at p. 1010 [finding stay order unnecessary and superfluous].)

B.      Standard of Review

In reviewing an order expunging a lis pendens, we apply dual standards of review. (*Rey Sanchez Investments v. Superior Court* (2016) 244 Cal.App.4th 259, 262 (*Rey Sanchez Investments*).)  First, we apply the substantial evidence test to the trial court's express and implied findings of fact.  (*Ibid.*)  Second, the trial court's resolution of questions of law, which include the interpretation of a statute and its application to undisputed facts, are subject to de novo review.  (*Ibid.*)

Finally, although this dispute comes before this court by way of writ rather than appeal, our ability to exercise discretion is significantly curtailed.  "The discretionary aspect of writ review comes into play primarily when the petitioner has another remedy by appeal and the issue is whether the alternative remedy is adequate."  (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113–114.)  "When an extraordinary writ proceeding is the only avenue of appellate review, a reviewing court's discretion is quite restricted."

10.

(*Ibid.*) Where a petitioner has a "substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, [petitioner] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it." (*Ibid.*) Section 405.39 forbids review of orders regarding expungement of lis pendens by way of appeal and requires the aggrieved party to seek writ relief. This court's ordinary authority to rely on discretionary reasons to decline review is therefore constrained.

## II. EVIDENTIARY ISSUES

### A. Rulings by the Trial Court

Before addressing the merits of the petition, we first must turn to several evidentiary rulings made by the trial court. Specifically, in sustaining TTP's evidentiary objections one and four, the trial court prevented the 2017 lease extension agreement in effect between J&A and TTP (which included the right of first refusal provision) and the executed September 2020 sales agreement between TTP and Adventure Church from being admitted into evidence.[3] The court also sustained objection 11 thereby excluding information about TTP-GP and its partners. " 'Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion.' " (*People ex rel. Lockyer v. Sun Pac. Farming Co.* (2000) 77 Cal.App.4th 619, 639.) Abuse of discretion "is shown only where the ruling 'exceeded the bounds of reason, all of the circumstances being considered.'" (*Frausto v. Department of California Highway Patrol* (2020) 53 Cal.App.5th 973, 1001.)

#### 1. Objections One and Four

Despite the very deferential standard, the executed agreements between the parties are not just relevant; they provide the evidentiary foundation to the present inquiry and do

---

**3** Although the trial court sustained TTP's objections to the lease extension agreement, it specifically concluded that the right of first refusal may be too vague to be enforceable based on too many contingencies.

11.

not appear otherwise inadmissible. We hold the court abused its discretion in sustaining objections one and four thereby excluding review of the executed agreements.

The trial court's order was silent and did not provide any reasoning or basis for sustaining the objections. With both exhibits, TTP raised objections claiming "[h]earsay as to the content" and "[n]o authentication of the writings as to" the exhibits.[4] The court first provided its evidentiary rulings in its tentative ruling and J&A addressed the objections at oral argument. Counsel for J&A stated, "So if the Court has declined to consider our evidence submitted in declaration form, then we would reiterate our request … [for] the opportunity to present evidence in the form of witness testimony. So to the extent the Court is declining to consider our evidence on declarations we would again request an evidentiary hearing so that we can present witness testimony as to those issues." The court did not address J&A's request nor did it revisit its evidentiary rulings.

As executed agreements, the exhibits are categorically not hearsay. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) " '[A] well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said … and not … whether these things were true or false, and in these cases the words … are admissible not as hearsay, but as original evidence.' " (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 109.) "Operative facts draw their significance

---

**4** The objections also listed a separate ground based on "lack foundation and personal knowledge" and cites to Evidence Code sections 403 and 702. Section 702 refers to the personal knowledge of a witness. "[T]estimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) The personal knowledge objection logically appears directed to the content of the declaration rather than the exhibits attached thereto. Issues of lack of foundation of a writing under section 403 are focused on the authentication of the document. (See Evid. Code, § 403, subd. (a)(3).) That objection is therefore redundant to the authenticity objection.

12.

from having been said or written regardless of whether they are true, and such facts lie outside the hearsay rule." (*Arechiga v. Dolores Press, Inc.* (2011) 192 Cal.App.4th 567, 576.) Accordingly, "documents containing operative facts, such as the words forming an agreement, are not hearsay." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316 (*Jazayeri*); *Bank of America v. Taliaferro* (1956) 144 Cal.App.2d 578, 581–582 [sales contract and assignment properly admitted].)

The other ground TTP raised when objecting to the exhibits was the lack of authenticity. To establish authenticity, the party introducing the writing must introduce "evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is" or establish "such facts by any other means provided by law." (Evid. Code, § 1400.) Simply put, section 1400 requires introduction of evidence sufficient to find that the writing is as claimed. As the proponent of the documents, J&A had the burden of showing their authenticity, including the absence of any material alteration. (*People v. Morris* (1991) 53 Cal.3d 152, 205, disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) "The trial court was required to admit the document in evidence if the trier of fact was presented with sufficient evidence to support a finding of authenticity." (*Morris, supra,* at p. 205.) "The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility." (*Jazayeri, supra*, 174 Cal.App.4th at p. 321.) "Evidence Code sections 1410 through 1421 list various methods of authentication of documents— e.g., by the testimony of a subscribing witness or a handwriting expert—but these methods are not exclusive." (*People v. Smith* (2009) 179 Cal.App.4th 986, 1001.)

In his declaration, counsel for J&A described the relevant terms of the lease agreement J&A obtained from its assignment of the prior owners of the brewery, including the terms upon which it would obtain the right to purchase the brewery premises. As for the purchase agreement between TTP and Adventure Church, counsel explained that a copy of the agreement was obtained from counsel for Adventure Church.

13.

Along with the purchase agreement, J&A attached the e-mail exchange with Adventure Church. It confirms church counsel obtained permission from Adventure Church and sent the documents to counsel for J&A on April 27, 2021.

To the extent there were concerns with the genuineness of the exhibits, a contention unsupported by argument from TTP, counsel for J&A asked the trial court for a formal evidentiary hearing to show the documents were, in fact, authentic copies of the agreements. The trial court did not respond to the request, so J&A was not provided an opportunity to further authenticate the documents or make a showing of trustworthiness through competent evidence. Upon review, further evidence is not necessary since the exhibits appear on their face to be genuine copies of the agreements. The evidence provided presents no reason to question whether the exhibits are unaltered copies of the relevant documents. Exhibit 1 to the FAC, the August 2012 lease and the 2017 lease amendment and extension, were both executed by Laurence Abbate, as "CFO" of TTP. In his declaration dated February 23, 2021, Abbate confirmed that J&A was the current tenant of the brewery premises and that the "current lease documents consist of the documents as set forth in the FAC as Exhibit 1—namely the Lease, the Lease Extension Agreement, and the Assignment of Lease (collectively the 'Lease')."

As for the September 2020 purchase agreement to sell the Tower Theatre parcel to Adventure Church, it was also signed by Laurence Abbate and provided to J&A's counsel by counsel for Adventure Church in April 2021, after counsel's request.

Given that Abbate's signature on exhibit 1 and the September 2020 purchase agreement appear to match, and that the signed purchase agreement was provided by adverse counsel during the course of litigation, this showing provides sufficient evidence of the authenticity of the agreement under Evidence Code section 1400.

14.

## 2. *Objection 11*

J&A's opposition papers included a declaration from its attorney. The first sentence of paragraph 18 of that declaration stated: "Tower Theater Properties, Inc. is a partner in Tower Theatre Productions." The paragraph then discussed two documents received in response to subpoenas to nonparties—specifically, (1) a communication of a Fidelity National Financial title officer describing a transfer in which TTP and Pacific Produce Distributors, Inc., a California corporation, became the two partners of TTP-GP; and (2) a document titled "Acknowledgement of Sequoia's First Right Complaint" signed by "Jim Abbate CEO" and "Laurence Abbate CFO" of "Tower Theatre Productions" and dated February 12, 2021. The acknowledgment referred to "Laurence Abbate and Jim Abbate[,] owners of Tower Theatre Productions." This statement about the owners supports the assertion that Laurence Abbate was one of TTP-GP's partners.

TTP objected to paragraph 18 of the declaration, asserting lack of foundation, lack of personal knowledge, speculation, and improper opinion. TTP objected to the two documents for lack of authentication and because the contents were hearsay. The trial court's sustained objection 11 without explanation. Therefore, we infer the court sustained the objections on all the grounds raised by TTP.

Sustaining the objections on these grounds was contrary to the rules of evidence. The title officer's communication was obtained by J&A in response to a subpoena for records and was provided with an affidavit by the custodian of records for Fidelity National Financial. The affidavit provided by the custodian of records explains the documents provided were true copies of requested files, and those documents were made and kept in the usual course of business. Similarly, the "Acknowledgement of Sequoia's First Right Complaint" was obtained from American Church Credit Union in response to a subpoena. Copies of nonparty business records produced in response to a subpoena are admissible if accompanied by declaration from the custodian of records, as is the case here. (Evid. Code, § 1562.) Also, as business records, they are subject to an exception to

15.

the hearsay rule. (Evid. Code, § 1271.) Under these circumstances, the trial court abused its discretion in sustaining the objections to the documents based on hearsay and authenticity concerns.

Based on the conclusion that the objections to the documents were improperly sustained, we also conclude the objection to paragraph 18 of the declaration of J&A's attorney for lack of foundation and personal knowledge (Evid. Code, §§ 403, subd. (a)(2), 702, subd. (a)), should not have been sustained. The documents provided a sufficient foundation for J&A's attorney's assertion of personal knowledge of the fact that TTP is a partner in TTP-GP. Thus, the objections to that portion of paragraph 18 of the declaration should have been overruled.

The documents are ambiguous as to who actually are the partners in TTP-GP but provide the evidentiary basis for the parties' two competing theories. J&A asserts the corporation, TTP, is a partner in TTP-GP. In contrast, counsel for TTP stated during oral argument his belief that TTP was not a partner and Laurence Abbate and other family members were partners in TTP-GP. This assertion is supported by the acknowledgment signed by Laurence Abbate stating that he was one of the "owners of Tower Theatre Productions" (i.e., a partner of the entity) and takes into account that the transfers described in the title officer's communication might not have been completed. The ambiguity about who are members of the partnership does not affect the outcome of our analysis of service of the lis pendens on TTP-GP, the owner of record. (See pt. III.C., *post*.)

B.     Motion to Admit New Evidence

On November 12, 2021, J&A filed a motion to admit new evidence for this court to consider when reviewing the petition. J&A asserts the new evidence will show the continued efforts on behalf of the Tower Theatre entities and Adventure Church to sell the Tower Theatre parcel. TTP filed an opposition to the motion on November 29, 2021.

16.

The motion is denied. As J&A notes, generally "when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) The additional evidence is not relevant to this court's inquiry. A lis pendens remains in effect thereby "preventing sale or encumbrance until the litigation is resolved or the lis pendens is expunged." (*Amalgamated Bank*, *supra*, 149 Cal.App.4th at p. 1011.) The only substantive grounds upon which a lis pendens can be expunged is if the underlying action does not contain a real property claim (§ 405.31) or the real property claim lacks probable validity (§ 405.32). Whether there is an active threat of sale to the real property is not relevant to the above inquiries.

III.     NOTICE OF RECORDING LIS PENDENS

    A.     Background

        1.     *TTP's Motion to Expunge*

TTP's May 2021 motion to expunge the lis pendens asserted J&A failed to serve the lis pendens on the owner of record prior to recordation as required by statute. For the first time, TTP asserted it was not the owner of the Tower Theatre parcel, stating: "According to the 2020 County Assessor's Roll, the owner of the [Tower Theatre] parcel … is Tower Theatre Productions, a California general partnership." Comparing this information with the contents of the proof of service recorded and filed with lis pendens, TTP argued "said owner was not served with the [lis pendens]."

TTP supported its factual assertions about improper service by citing two documents attached to its request for judicial notice. The first was a copy of the lis pendens—that is, the notice of pendency of action, including the proof of service, recorded by the Fresno County Recorder on February 22, 2021. The second document was described as "[t]he Fresno County Assessor Roll's latest owner information and mailing address, through ParcelQuest, for the property address of 777 E. Olive Avenue,

17.

Fresno, CA 93728, APN: 451-265-03." That document consisted of a one-page printout of a "FULL PROPERTY DETAIL REPORT" provided by ParcelQuest. The digitally created report listed the owner as "TOWER THEATRE PRODUCTIONS" and the mailing address as "815 E OLIVE FRESNO CA." The "Sale History" portion of the report listed only one transfer and gave a document date of February 13, 1990. The report contained the following disclaimer: "* The information provided here is deemed reliable, but is not guaranteed."

The origin of the ParcelQuest report was described in a declaration by Attorney C. Fredrick Meine III that stated he had conducted "research regarding the county assessor's roll and ownership of the subject property, and ordered the latest assessment role [*sic*] information." Meine also stated: "My research on the website maintained by the Fresno County Assessor was intended to obtain the identity of the latest owner information and mailing address from the Assessor's Roll. The Assessor's Roll showed that the property known as APN: 451-265-03, is owned by Tower Theater Productions, which is a California general partnership. A true and correct copy of said 2020 Fresno County Assessor Roll's owner information and mailing address, through ParcelQuest, is attached to the Request for Judicial Notice as Exhibit 2."[5] A review of TTP's moving and reply papers shows it relied exclusively on the ParcelQuest report to support its factual assertion that TTP-GP was the owner of record.

### 2. *J&A's Opposition*

J&A responded to TTP's arguments about defective service by asserting TTP-GP had notice and actual knowledge of the lis pendens. J&A argued (1) TTP was served

---

[5] In this quote, Meine's declaration uses the spelling "Theater" in referring to a general partnership, rather than the spelling "Theatre" used in the ParcelQuest report. We interpret Meine's reference to "Tower Theater Productions" as containing a typographical error and conclude Meine intended to refer to the entity listed in the ParcelQuest report, "Tower Theatre Productions."

18.

with the lis pendens through is agent for service, Laurence Abbate, (2) TTP was a partner in TTP-GP, and (3) notice to a partner constitutes notice to the partnership. Accordingly, J&A asserted TTP-GP was provided with actual notice and quoted *Biddle v. Superior Court* (1985) 170 Cal.App.3d 135 (*Biddle*) for the principle that "slavish adherence to the technical requirements of service would defeat the overall legislative objective." (*Id.* at p. 138.) Alternatively, J&A argued TTP lacked standing to assert defective service on TTP-GP, a separate entity that was not a party to the lawsuit and had not sought expungement in its own right.[6]

### 3. The Trial Court's Order

The July 2021 order granting the motion to expunge concluded the lis pendens had not been properly served. The order referred to the copy of the recorded lis pendens attached as the first exhibit to TTP's request for judicial notice and took judicial notice of that document. The order was silent on whether the court also took judicial notice of the ParcelQuest report. The order includes the court's finding that J&A "did not serve the notice of pendency of action on the owner of record for the subject property, Tower Theatre Productions." Based on this finding, the court concluded that "under the express terms of section 405.23, [J&A's] lis pendens is void and invalid as to the owner of record, Tower Theatre Productions."

The trial court also noted J&A's argument that it had substantially complied with the statute by serving the agent of TTP, an entity that J&A alleged was a partner in TTP-GP. The court concluded substantial compliance was insufficient under the current statutory scheme, which was enacted after the decision in *Biddle*, *supra*, 170 Cal.App.3d 135.

---

**6** Section 405.30 provides that any party or nonparty may move to expunge a lis pendens. We assume for purposes of this appeal that TTP has standing and, therefore, do not reach the question of whether section 405.30 allows a party to move to expunge a lis pendens on the ground of defective service as to a nonparty.

B.     Relevant Law

The statutes that govern the service of a lis pendens and the consequences of improper service are sections 405.22 and 405.23.  Both provisions were quoted in the trial court's order granting the motion to expunge.

Section 405.22 provides that, prior to recordation, the claimant must cause a copy of the lis pendens "to be mailed, by registered or certified mail, return receipt requested, [1] to all known addresses of the parties to whom the real property claim is adverse and [2] to all owners of record of the real property affected by the real property claim as shown by the latest county assessment roll."  The comment to section 405.22 states it "continues the service and filing requirements specified in former [section] 409(c) and (d), which apply except in eminent domain actions."  (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.22, p. 331.)[7]

Section 405.23 provides: "Any notice of pendency of action shall be void and invalid as to any adverse party or owner of record unless the requirements of Section 405.22 are met for that party or owner and a proof of service in the form and content specified in Section 1013a has been recorded with the notice of pendency of action."  The comment to section 405.23 states it continues the rule of former [section] 409(d) that a lis pendens is void and invalid unless the service and filing requirements now specified in [section] 405.2[2] are satisfied.  It is not the intention of this section to disapprove the principles of waiver applied in *Biddle v. Superior Court*[, *supra,*] 170 Cal.App.3d 135."  (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.23, p. 332.)

A party contending that a lis pendens is "void and invalid" for purposes of section 405.23 due to defective service may raise this ground in a motion for expungement filed

---

[7]     Former section 409, as amended in 1981, provided "for the first time that the lis pendens must be mailed 'to all known addresses of the adverse parties and to all owners of record as shown by the county assessor's office.' " (*Carr v. Rosien* (2015) 238 Cal.App.4th 845, 852 (*Carr*); Stats. 1981, ch. 889, § 1, pp. 3400–3401.)

pursuant to section 405.30. (*Rey Sanchez Investments*, *supra*, 244 Cal.App.4th at p. 263.) This statutory interpretation is confirmed by a comment to section 405.30, which states the procedure for moving to expunge specified in section 405.30 applies to this ground and three others. (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.30, par. 2, p. 337.)

C. The Lis Pendens Was Mailed to the Owner of Record

*1. Owner of Record*

The trial court found that TTP-GP was the owner of record of the Tower Theatre parcel. The evidence presented by TTP to support this finding was Meine's declaration and the ParcelQuest report addressing the contents of the assessment roll. TTP requested the trial court take judicial notice of the ParcelQuest report. The court expressly took judicial notice of the lis pendens, the first exhibit to the request. In contrast, the court did not state whether it took judicial notice of the ParcelQuest report and did not identify the evidence relied upon to find TTP-GP was the owner of record. In view of the court's silence on these points, we infer the court impliedly granted the unopposed request as to the ParcelQuest report and relied upon the report in making its finding as to the owner of record. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellate courts indulge all presumptions to support order on matters as to which the record is silent]; see *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918.)

J&A did not oppose the request for judicial notice or otherwise object to the admissibility of the ParcelQuest report and, therefore, we regard the report as evidence properly before the trial court. Stated another way, J&A forfeited its objections and we will not consider its arguments about the inadmissibility of the report that were not raised in the trial court.

The ParcelQuest report states "TOWER THEATRE PRODUCTIONS" is the owner of the Tower Theatre parcel. Meine's declaration misspells this entity's name and

21.

states it is a general partnership that owns the Tower Theatre parcel. Laurence Abbate's June 8, 2021 declaration refers to "Tower Theatre Productions, a California general partnership." Based on the report and declaration, we conclude substantial evidence supports the trial court's finding that TTP-GP was the "owner of record" of the Tower Theatre parcel "as shown by the latest county assessment roll." (§ 405.22.)

### 2. Proper Mailing Address

The issue of the mailing address to be used when serving a lis pendens on an owner of record was discussed in *Carr*, *supra*, 238 Cal.App.4th at pages 853 to 854. The court stated, "the statute does not *expressly* require mailing to the *address* shown on the assessment roll" or "*expressly* require the claimant to make any particular efforts to discover an owner's address." (*Id.* at p. 853.) The court dealt with the absence of an express requirement by interpreting the statute to mean "all claimant has to do is mail the lis pendens to the address shown on the assessor's roll; claimant does not have to make sure the address is valid." (*Id.* at p. 854.) We join this interpretation of section 405.22, which requires a copy of the lis pendens be mailed "to all owners of record of the real property … as shown by the latest county assessment roll." (§ 405.22.)

Here, the only evidence of the mailing address for TTP-GP shown on the assessment roll is the ParcelQuest report. That report states 815 East Olive Avenue in Fresno is TTP-GP's mailing address. The proof of service recorded with the lis pendens states it was sent by certified mailed to Laurence Abbate at "815 E. Olive Avenue" in Fresno. Therefore, we conclude J&A mailed a copy of the lis pendens to the address of TTP-GP "as shown by the latest county assessment roll." (§ 405.22.)

### 3. Service on a Partnership

Having identified TTP-GP as the owner of record and 815 East Olive Avenue as its mailing address shown by the assessment roll, the next issue is whether the lis pendens was "mailed … to" TTP-GP as required by section 405.22. This issue arises because the

proof of service states the lis pendens was mailed to "Laurence Abbate, Agent for Service[,] Tower Theater Properties, Inc." TTP argues the proof of service shows the lis pendens was not served on the general partnership that is the owner of record and, therefore, the lis pendens is void and invalid. In response, J&A argues that TTP is a partner in TTP-GP and, under California law, service on a partner constitutes notice to the partnership. This argument applies with equal force to the possibility that Laurence Abbate, rather than TTP, is a partner in TTP-GP.

Initially, we note that California's statutory scheme governing lis pendens and section 1013a do not provide specific instructions for how to serve a partnership in particular or legal entities in general. In comparison, when a summons is served on a legal entity, the summons must state in substance that the person to whom the summons is delivered is being served "on behalf of (here state the name of the corporation or the unincorporated association) as a person upon whom a copy of the summons and of the complaint may be delivered to effect service on said party .…" (§ 412.30.) Because the Legislature has shown it is capable of including an "on behalf of" requirement when intended, we will not infer the Legislature intended to include a similar requirement in section 405.22 by remaining silent on the matter.

Without explicit guidance as to what it means for a lis pendens "to be mailed … to" (§ 405.22) a partnership that is the owner of record, our interpretation of that phrase (1) must maintain the balance of competing interest of litigants, property owners, and prospective purchasers struck by the current statutory scheme, (2) must effectuate the specific objectives of sections 405.22 and 405.23 and the general objectives of the lis pendens statute, and (3) must promote justice. (*The Formula Inc. v. Superior Court*, *supra*, 168 Cal.App.4th at p. 1464.)

The objective of the mailing requirement in former section 490, the predecessor statute, was "to assure that property owners receive prompt notice of the recording of a lis pendens." (*Biddle, supra,* 170 Cal.App.3d 135, 137.) The mailing requirement and the

23.

consequences for failures to comply were not changed by the 1992 amendment. (*Carr*, *supra*, 238 Cal.App.4th at p. 852.) Thus, the current mailing requirement still "is intended to make sure that all owners of the property, and all adverse parties claiming an interest in the property, are aware of the lis pendens." (*Id*. at p. 853.) Providing notice furthers the interests of property owners and adverse parties with claims by enabling them to pursue a motion to expunge if there are grounds for expungement. (*Ibid*.) Providing notice also allows them to take the existence of the lis pendens into account in any transaction involving the real property. (*Ibid*.)

Because the purpose of the mailing requirement is to provide prompt notice of a lis pendens, we turn to partnership law and its rules for providing notice to a partnership. The Uniform Partnership Act of 1994 (Corp. Code, § 16100 et seq.) states: "A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner." (Corp. Code, § 16102, subd. (f).) The rule for serving a summons and complaint is broader. Under subdivision (a) of section 416.40, service of a summons and complaint on a general partnership is accomplished by delivering a copy to an agent designated for service or "to a general partner *or the general manager* of the partnership." (§ 416.40, subd. (a), italics added.) Based on these statutes, we conclude that a lis pendens mailed to a partner qualifies as a lis pendens "mailed … to" the partnership for purposes of section 405.22.

Here, based on the evidence presented and the arguments of counsel, we conclude that TTP or Laurence Abbate is a partner in TTP-GP or, perhaps, both are members of the partnership. (See pt. II.A.2., *ante*.) The alternative that TTP is a partner is supported by the fact that TTP holds itself out as the landlord with the authority to lease the brewery premises and as the entity with the authority grant a right of first refusal for the purchase of those premises. For instance, the extensive communications between J&A and TTP

24.

prior to the recordation of the lis pendens clearly indicate TTP, not a different entity, was the party extending the offers to purchase the brewery premises under the terms of the right of first refusal. Laurence Abbate's February and March 2021 declarations refer to J&A as a tenant of TTP and describes when TTP finally developed the desire to sell the Tower Theatre parcel. Similarly, the declaration of Anthony Flores, the CEO of Adventure Church, states that Adventure Church is in the late stages of purchasing the Tower Theatre parcel from TTP and refers to its transaction with TTP. Pursuant to Corporations Code section 16301, subdivision (a), each partner of a general partnership is an agent of the partnership for purposes of its business. Laurence Abbate and TTP's actions involving the Tower Theatre parcel would be fraudulent if they did not have the authority to bind TTP-GP.

Therefore, to the extent that J&A had the burden of proving that the individual to whom the lis pendens was mailed with either a partner in TTP-GP or the agent for service of a corporation that was a partner in TTP-GP, we conclude J&A carried that burden by showing Laurence Abbate, TTP, or both, were partners in TTP-GP. TTP offered no evidence refuting J&A's showing, as the party with the best access to any such evidence. (See generally, *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1086–1088 [statutes allocating burden of proof and factors relevant to a court's reallocating the burden].) Based on this showing and the law that notice to a partner is notice to the partnership, we conclude that mailing a copy of the lis pendens to Laurence Abbate satisfies the requirement of section 405.22 that the lis pendens "be mailed … to" TTP-GP as the owner of record. The fact that the notice was addressed to him as TTP's agent for service does not negate the fact that the partnership, through Laurence Abbate, received the copy of the lis pendens. Accordingly, service of the lis pendens was not defective, the lis pendens is not "void and invalid" for purposes of section 405.23, and the motion to expunge should not have been granted on that ground.

D.      Substantial Compliance with Mailing Requirements

As an alternative to our conclusion that the lis pendens was mailed to the owner of record in accordance with section 405.22, we consider the legal question of whether substantial compliance with section 405.22 is sufficient and, if so, whether substantial compliance was achieved in this case.

*1.      Substantial Compliance is Allowed*

The trial court noted that it was questionable whether the substantial compliance principle recognized in *Biddle* was still good law.  The issue of whether "substantial, rather than strict, compliance with section 405.22 might suffice to prevent a lis pendens from being declared 'void and invalid' under section 405.23" has been mentioned twice by the Fourth District and not resolved.  (*Rey Sanchez Investments*, *supra*, 244 Cal.App.4th at p. 264; *Carr*, *supra*, 238 Cal.App.4th at p. 855.)  Here, we resolve that question of law by concluding substantial compliance satisfies the mailing requirement of section 405.22.

In 1992, when the Legislature adopted the current lis pendens statutes, it did not explicitly disapprove the substantial compliance principle set forth in *Biddle* in either the text of the statutes or the comments.  Instead, the comments to both section 405.22 and section 405.23 state each new section "continues" the rule or requirements of former section 409, subdivisions (c) and (d). (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.22, p. 331 & foll. § 405.23, p. 332.)  The use of the word "continues" supports the inference that the Legislature accepted the published cases interpreting former section 409's mailing requirement.  The use of "continues" does not reasonably support the inference that the Legislature intended to silently disapprove any of those cases.  In addition, the statement in the comment to section 405.23 that the Legislature did not intend to disapprove the principles of waiver applied in *Biddle* is insufficient, when read in context with the word "continues," to reasonably imply that the unmentioned substantial compliance principle adopted in *Biddle* was disapproved.

26.

Furthermore, allowing substantial compliance does not undermine the purpose of the mailing requirement—prompt notice to the owner of record—or other purposes of the lis pendens statutes.  In another context, substantial compliance with a service requirement occurs when three conditions are met.  (*Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852, 865 (*Carol Gilbert*).)  "First, there must have been some degree of *compliance* with the offended statutory requirements."  (*Id*. at pp. 865–866.)  Second, the circumstances of the attempted service must have made it highly probable that it would impart the same notice as strict compliance.  (*Id*. at p. 866.)  Third, it must in fact have imparted such notice or at least provided sufficient notice to put the notified party on its defense.  (*Id*. at p. 866; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (2021) ¶ 4:92, pp. 4-13 to 4-14.)

Our legal conclusion that substantial compliance is sufficient stands in harmony with the acceptance of substantial compliance in other legal contexts requiring service or notice.  In particular, substantial compliance is all that is required to effectively serve a summons and complaint on a corporation or unincorporated association (such as a partnership) pursuant to section 412.30.  (*Cory v. Crocker National Bank* (1981) 123 Cal.App.3d 665, 669.)  In our view, it would be incongruous to impose stricter service requirements for a lis pendens than for the summons and complaint that initiates a lawsuit and gives the trial court personal jurisdiction over the entity served.

### 2. *Substantial Compliance Was Achieved*

Next, we assume that neither TTP nor Laurence Abbate was a partner in TTP-GP. Under this assumption, notice to the corporation or Laurence Abbate would not constitute notice on the partnership under the principle that notice to a partner is notice to the partnership.  As described below, however, we conclude substantial compliance with section 405.22 was achieved.

27.

As to the first condition for substantial compliance, there was some degree of compliance with the statutory requirements. (See *Carol Gilbert*, *supra*, 179 Cal.App.4th at pp. 865–866.) The notice included a copy of the lis pendens and it was sent by certified mail to the correct address.

As to the second and third conditions, we note the mailing of an additional copy of the lis pendens in an envelope addressed to "Tower Theatre Productions"—the name shown on the assessment roll—or to Laurence Abbate on behalf of TTP-GP would have imparted the same notice as actually provided. Service on a corporation or an unincorporated association, such as a partnership, can only be accomplished by serving some individual as the corporation's or association's representative. (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1435.) Here, that person was Laurence Abbate. Even if TTP and Abbate were not partners in TTP-GP, notice to Abbate was highly probable to impart the same notice and knowledge to TTP-GP as mailing a copy of the lis pendens in an envelope addressed to TTP-GP. Abbate's personal involvement in negotiating the sale of the Tower Theatre parcel with Adventure Church and his meeting with J&A to address the issues pertaining to the brewery premises are described in his declarations. In view of Abbate's substantial involvement in all of the transactions and events related to the Tower Theatre parcel, we find as a matter of law that he had a sufficiently " 'close relationship' " with the general partnership. (*Carol Gilbert*, *supra*, 179 Cal.App.4th at p. 864; see *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 414.)

Also, J&A served a copy of the lis pendens by e-mail on Attorney David Camenson. Camenson was listed as counsel for landlord TTP on the proof of service for the lis pendens notice. Camenson's June and September 2021 declarations and correspondence clearly show he also was representing the unidentified sellers of the Tower Theatre parcel in negotiations with Adventure Church. "[T]he law of principal and agent is generally applicable to the relation of attorney and client." (*Bak v. MCL*

*Financial Group, Inc.* (2009) 170 Cal.App.4th 1118, 1125, citing *Sullivan v. Dunne* (1926) 198 Cal. 183, 192.) "Under general agency principles, 'an attorney is his client's agent, and … the agent's knowledge is imputed to the principal even where … the agent does not actually communicate with the principal, who thus lacks actual knowledge of the imputed fact.' " (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 797.) "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, § 2332.)

Faced with the evidence in the record and the rules of law governing notice to a partnership, counsel for TTP conceded during oral argument that the lis pendens was mailed to the address of the partnership and the partnership had actual knowledge of the lis pendens, but argued the statute did not refer to actual knowledge. Here, our consideration of the fact of actual knowledge of the lis pendens relates to applying the principles of substantial compliance, not strict compliance with section 405.22.

In summary, we conclude J&A established the three conditions necessary to show substantial compliance with the mailing requirement of section 405.22 even if neither TTP nor Laurence Abbate were partners in TTP-GP, the owner of record. (See *Biddle*, *supra*, 170 Cal.App.3d at p. 138 [actual notice is the heart of the mailing requirement and "slavish adherence to the technical requirements of service would defeat the overall legislative objective." (*Id.* at p. 138.)[8]

---

[8] Having concluded that J&A actually complied or, alternatively, substantially complied with the mailing requirements of section 405.22, we do not reach the questions of whether TTP (1) waived—that is, forfeited—the argument that the owner of record was not properly served or (2) is equitably estopped from raising that argument.

29.

IV.    PROBABLE VALIDITY OF REAL PROPERTY CLAIM

       A.    Background

       The substantive grounds raised in TTP's motion to expunge the lis pendens were that J&A lacked evidence to establish the probable validity of its real property claim and, moreover, J&A had not even pleaded a viable real property claim.[9] TTP asserted the evidence showed that J&A failed to accept an offer to sell the brewery premises and the time to do so had lapsed. TTP also argued a viable real property claim had not been pleaded because J&A's right of first refusal to purchase was too uncertain to be legally enforceable in light of the difficulty of defining a price for the brewery premises when the sale was of the larger Tower Theatre parcel.

       By the time J&A filed its opposition to the motion to expunge the lis pendens on June 2, 2021, it had, through formal and informal discovery, obtained additional records relating to the sale of the Tower Theatre parcel to Adventure Church. On September 29, 2020, months prior to J&A being provided notice of the sale, Laurence Abbate and Adventure Church had executed a sales agreement in the amount of $3.9 million. Laurence Abbate did not sign the agreement on behalf of TTP or TTP-GP, but on behalf of another entity, "Tower Theater Productions For the … Performing Arts, a CA nonprofit Public Benefit Corporation" (Nonprofit Corporation), with an address of "815 E. Olive Ave., Fresno, CA."[10]

---

[9]    TTP also alleges J&A could not state a valid real property claim because it was in breach of the lease agreement for failure to pay common area maintenance charges. This issue was not mentioned by TTP in its negotiations with J&A over the right of first refusal, the matter was not addressed by the superior court in its order granting the motion to expunge, and was first raised by TTP in this writ proceeding at oral argument. "[C]ontentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness." (*Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463.) We therefore decline to review the merits of TTP's contention.

[10]    The Nonprofit Corporation uses a different spelling of "Theater" than the entity referred to as "TOWER THEATRE PRODUCTIONS" in the ParcelQuest report.

J&A's opposition to the motion to expunge argued TTP breached the terms of the right of first refusal as it only provided notice of the sale months after all the contingencies were lifted, and contractual obligations existed between TTP and Adventure Church. J&A set forth how it could not reasonably exercise its right to purchase the brewery premises without knowing the price of the sale of the entire property and the terms of the sales agreement, which were not provided until April 27, 2021. As soon as it learned the Tower Theatre parcel was being sold for $3.9 million, J&A provided written notice of its intent to exercise its right to purchase the brewery premises. Based on the new evidence obtained, J&A contended TTP acted in bad faith by failing to disclose the actual purchase price of the Tower Theatre parcel and inflating and misrepresenting both the sales price for the Tower Theatre parcel and the brewery premises in an attempt to dissuade J&A from exercising its right to purchase the brewery premises.

The trial court granted the motion to expunge the lis pendens based on its application of the requirements of sections 405.30 and 405.32 and the definition of probable validity in section 405.3. Section 405.32 states, "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (§ 405.32.) Probable validity, with respect to a real property claim, "means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." (§ 405.3.) Section 405.30 describes the procedures moving for expungement and states, "The claimant shall have the burden of proof under Sections 405.31 and 405.32." (§ 405.30.) Thus, section 405.30 explicitly places the burden of proving the probable validity of the real property claim on J&A, the claimant.

The trial court found that J&A "has not met its burden of showing that its real property claims are probably valid." In making this finding, the court stated that (1) section 36 of the lease providing J&A's right to first refusal may be too vague to be

31.

legally enforceable due to the difficulty in determining the purchase price or effectuating a parcel split to allow the brewery premises to be sold separate and apart from the theater; (2) TTP had provided J&A the opportunity to purchase the parcel for a fair and reasonable price of $1.268 million; and (3) even if TTP had disclosed the purchase price of the Tower Theatre parcel it would not have assisted in determining the price of the brewery premises. The court concluded: "Thus, there are many contingencies that must occur before the tenant would be able to complete the purchase of the separate premises parcel, and those contingencies might never come to pass…. As a result, it is not clear that the purchase option or right of first refusal is even a valid and enforceable agreement."

       B.      <u>Terms of the Right of First Refusal</u>

       As part of the amendment to the lease executed on June 13, 2017, section 36 was added. It provides J&A the right to purchase the brewery premises if certain contingencies are met. The following are the relevant subdivisions of section 36:

> "36. <u>TENANT'S OPTION TO PURCHASE:</u>
>
> "A) <u>Grant of Option</u>: **Landlord shall not**, at any time prior to the termination of this Lease, including any extensions thereof, **sell the [Brewery] Premises**, or any interest therein, **without first giving to Tenant written notice of such desire to sell** (hereinafter the 'Notice of Sale'). Upon receipt of the Notice of Sale, Tenant shall have an option to purchase the Premises (the 'Option') on the terms and conditions set forth in this Paragraph 36. [¶] … [¶]
>
> "D) <u>Parcel Split</u>: **The parties acknowledge that currently the [Brewery] Premises is not a separate legal parcel which can be sold.** Promptly after the exercise of the Option, Tenant, at Tenant's sole cost and expense, shall employ an engineer to prepare the maps required to submit to the City of Fresno an application for a parcel split to cause the Premises to become a separate legal parcel of real property which can be sold to Tenant, such that within sixty (60) days after Tenant has exercised the Option, Landlord and Tenant can approve such maps. Upon such approval, the Deposit (as defined below) shall be released to Landlord from escrow. In that event, Landlord, at Landlord's sole cost and expense, agrees to diligently pursue

the steps necessary to create a separate legal parcel of real property of the Premises which can be sold to Tenant (the 'Legal Parcel'). **The parties agree that the purchase of the [Brewery] Premises pursuant to the Option is conditioned upon the creation of the Legal Parcel for no more than Twenty Thousand and No/100 Dollars ($20,000.00) of cost to Landlord and that there is no guaranty that Landlord can gain approval for the creation of the Legal Parcel.** [¶] … [¶]

"G) Purchase Price of the [Brewery] Premises: If Tenant exercises the Option on or before December 31, 2017, then the purchase price to Tenant shall be Five Hundred Fifty Thousand and No/100 Dollars ($550,000.00). **If the Option is exercised on or after January 1, 2018, the purchase price for the Premise [*sic*] shall be** (1) a price mutually agreeable to both parties if Landlord offers to sell the Premises and has not yet received an acceptable offer, or **(2) a price and on terms equaling or more favorable to Landlord than terms offered by a third party which offer Landlord intends to accept (the 'Purchase Price').**" (Boldface added.)

C.        Law Applicable to Rights of First Refusal

"A right of first refusal is a contractual right to purchase property in the event the owner decides to sell." (10 Miller & Starr, Cal. Real Estate (4th ed. 2021) § 34:118.) "Unlike an option that gives the tenant the right to purchase the property at the election of the tenant, when the lease gives the tenant the right of first refusal to purchase the demised premises, the tenant only has the conditional right to acquire the property. The tenant has a preference to purchase the property over other purchasers if the landlord elects to sell the property." (*Ibid.*)

"A right of first refusal, also called a preemptive right [citation] is 'the "conditional right to acquire … property, depending on the [owner's] willingness to sell." [Citation.] The holder of the right merely has the preference to purchase the property over other purchasers if the owner of the property "elects to sell the property." [Citation.] The right does not become an option to purchase until the owner of the property voluntarily decides to sell the property and receives a bona fide offer to purchase it from a third party. [Citations.] Normally, the right is enforceable against third persons

entering into a contract to buy the property with notice of the holder's right.' "
(*Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389.)

"The contract terms dictate the particular circumstances that will trigger the right."
(*Hartzheim v. Valley Land & Cattle Co.*, *supra*, 153 Cal.App.4th at p. 389.) Accordingly, the question presented is primarily one of contract interpretation. (*Ibid.*) " ' " ' "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party." ' " ' " (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1348–1349.)

        D.      Legal Enforceability of the Right of First Refusal

The trial court finding that the right of first refusal may be invalid or unenforceable was premised on the difficulty of determining the sale price as to a portion of the greater real estate parcel being sold. In reaching its determination, the trial court did not provide any legal authority supporting its conclusion. As described below, relevant legal authority weighs in favor of finding contracts enforceable, even in the specific instance presented here.

Various provisions of the Civil Code require interpreting contracts to be lawful and operative, if reasonably possible. Civil Code section 1636 states, "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636; see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) Similarly, Civil Code section 1643 states, "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (See *Jacobs v. Freeman* (1980) 104 Cal.App.3d 177, 188.)

" '[I]t is one of the cardinal rules of interpreting an instrument to give it such construction as will make it effective rather than void.' " (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 954; see Civ. Code, § 3541.)  " ' "In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard.  It must take language as it is and people as they are.  All agreements have some degree of indefiniteness and some degree of uncertainty." ' " (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 777.)  " ' "[T]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained." ' " (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 349; *Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 481 (*Cal. Lettuce Growers*).)  Moreover, counsel for TTP at oral argument conceded that TTP's attorney drafted the 2017 lease extension agreement containing section 36 setting forth the terms of the right of first refusal.  Because TTP drafted the contractual terms, any uncertainty must be resolved against it.  (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 29.)  "In cases of uncertainty … , the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."  (Civ. Code, § 1654.)

In finding the right of first refusal contained in section 36 of the lease to be unenforceable, the trial court specifically referred to the purchase price and the condition of obtaining a parcel split of the Tower Theatre parcel to allow the sale of the brewery premises to take place.  We will address the terms as applied to each issue to determine whether the right of first refusal is sufficiently certain to be enforced.

After January 2018, the terms of the lease do not state a specific price for the brewery premises but defined the price as "equaling or more favorable" than the third party offer accepted by landlord.  "[I]t is well settled that a contract need not specify price if it can be objectively determined."  (*Cal. Lettuce Growers*, *supra*, 45 Cal.2d at p. 482.)  "Unless the parties intended to leave the determination of price to future

negotiations, courts should make the necessary findings and set the price under the applicable code provisions." (*Ibid.*)  Not providing a set purchase price is common in agreements providing a tenant's right of first refusal.  "In most cases the lease gives a right of first refusal to purchase the property on the same terms and conditions as offered by a third-party purchaser." (10 Miller & Starr, Cal. Real Estate, *supra,* § 34:120.)  "It is the very essence of a right of first refusal that the price and terms will be determined in accordance with subsequent events as provided in the lease. The price and terms become definite and ascertainable upon the occurrence of the later event, such as a bona fide offer by a third person, which is sufficient to make the preemptive right definite and enforceable at that time." (*Ibid.*; see e.g. *Moreno v. Blinn* (1947) 81 Cal.App.2d 852, 856 ["[Lessee] was given the first right to purchase for the price at which the lessor was willing to sell.  That was a matter capable of ascertainment, and it became fixed and determined long before this action was brought."].)

As the trial court noted, the determination of the price of the brewery premises is further complicated as it is only a portion of the Tower Theatre parcel subject to sale. However, this specific issue has been addressed and courts generally have found rights of first refusal to remain enforceable even if the sale involves a larger parcel.  "Courts will not tolerate schemes designed to avoid a contractual right.  *For example, a landlord cannot avoid a right of first refusal to purchase a property by accepting an offer to purchase a larger parcel including the portion subject to the right.*" (*Hartzheim v. Valley Land & Cattle Co.*, *supra*, 153 Cal.App.4th at p. 393, italics added.)  Miller and Starr sets forth how the right of first refusal applies in such instances:

> "Right given regarding a part of a larger parcel.  Where the tenant has a
> right of first refusal to purchase a portion of a larger parcel, the landlord
> cannot defeat the tenant's right to purchase by the landlord's sale of the
> entire parcel without an allocation of the price to the leased portion.  In
> such cases, the landlord must comply with the implied covenant of good
> faith and fair dealing and make a reasonable allocation, or the court will

determine the fair market value of the portion of the property subject to the tenant's rights in order that the tenant may exercise those rights. [¶] … [¶]

"The decisions are not clear as to the procedure for determining the purchase price of the tenant's portion. Presumably, the price offered by the third party for the whole is allocated, and that price is apportioned between the parcel to be purchased by the tenant and the remainder portion of the property." (10 Miller & Starr, Cal. Real Estate, *supra,* § 34:120.)

The main case on point is *Maron v. Howard* (1968) 258 Cal.App.2d 473, 486 (*Maron*), in which the landlord sold a larger property despite a tenant of a smaller parcel having a right of first refusal. The *Maron* court held the "agreement of first refusal as contained in the lease was sufficiently certain to make the precise act to be done clearly ascertainable" despite the purchase offer for a larger property. (*Ibid.*) The court found landlord and purchaser, "with full knowledge of plaintiff's rights, set about to effect a sale and purchase of the property in such manner as to destroy the right of the plaintiff to make his offer to purchase on the same terms and conditions as were contained" in the third party offer, despite the third party offer being for a larger property. (*Id.* at p. 487.) " 'A party who prevents fulfillment of a condition of his own obligation commits a breach of contract [citations] and cannot rely on such condition to defeat his liability.' " (*Ibid.*) Finally, the *Maron* court explained trial courts are the proper adjudicative bodies to determine the price or value of real property when so required. "Determination of the value of the property is a common task of courts in condemnation, partition, and other proceedings. If equitable considerations support the position of one who seeks specific performance, particularly if he has previously changed his position in reliance on the contractual right that he seeks to enforce, courts of equity will assume the task of ascertaining the consideration if it has become impossible of ascertainment by the method provided in the contract." (*Id.* at pp. 487–488.)

Under relevant legal authority, rather than find the right of first refusal unenforceable based on difficulty in determining the purchase price, it was incumbent on the trial court to undertake that determination itself. J&A set forth examples of methods

37.

the trial court could use to determine a purchase price of the brewery premises using the purchase price of the greater parcel. For example, the court could divide the purchase price by the square footage of the parcel and determine the value of the brewery premises based on its proportional share of the square footage of the greater parcel. Alternatively, J&A noted it was provided an appraisal of the Tower Theatre parcel and its component parts which was determined to be significantly greater than the offer price provided by Adventure Church. Another method for determining the purchase price would involve reducing the appraised value of the brewery premises based on the proportional value of the actual purchase price compared to the appraised value of the Tower Theatre parcel. Such an equitable determination would be provided significant discretion as long as the determination and value are premised and correlated in some manner to the third party offer to purchase the entire parcel. However, the trial court's determination the right of first refusal was rendered unenforceable because it was not possible to ascertain the purchase price is not legally tenable.

Next, the trial court expressed concern the right of first refusal would not be enforceable because the separate sale of the brewery premises first requires a parcel split of the larger Tower Theatre parcel. The lease contained a detailed paragraph setting forth the procedure and responsibilities of the respective parties to obtain a parcel split from the City of Fresno. The tenant is first required to hire an engineer to prepare new parcel maps for review and acceptance by tenant and landlord within 60 days of the date the right to purchase was exercised. From there, landlord is to submit and process the application for the parcel split with the City, with the caveat Landlord would be responsible for no more than $20,000 of the costs involved in obtaining the parcel split. Finally, the paragraph concludes by acknowledging "there is no guaranty that Landlord can gain approval for the creation of the Legal Parcel." Even though the parties were aware a parcel split may not be possible, they invested significant time and effort to set forth a detailed process to effectuate the parcel split. It is unlikely they created legally

enforceable obligations regarding how to obtain the parcel split if they believed it was unlikely to be obtained. It was improper for the trial court to disregard the stated intent of the parties, interpret any uncertainty contained in the right of first refusal in favor of TTP as the drafting party, and render the contractual terms unenforceable based on the unsupported conclusion the parcel split was not likely to occur.

Additionally, the trial court's ruling was made despite unrebutted evidence presented by J&A indicating the parcel split was feasible. J&A provided the declaration of Mauro Weyant, a professional land surveyor, who opined based on his experience with parcel maps, and the City of Fresno parcel map approval process, there would be no barrier to obtaining a parcel split to create a separate parcel for the brewery premises. Based on this evidence, J&A has shown it is more likely than not a parcel split can be obtained and the right of first refusal can be enforced.

E.     Offer to Sell Brewery Premises for $1.268 Million

The trial court also found J&A's real property claims were likely not valid because TTP had provided an offer to sell the brewery premises to J&A for $1.268 million and the offer was "fair and reasonable." J&A does not deny TTP provided notice and an offer to sell the premises at that price; rather it contends the offered price did not comply with the terms of the lease as the price was greater than that offered by Adventure Church. Second, because TTP did not disclose the sales price, J&A contends it was not possible for it to determine if the price offered by TTP complied with the price terms set forth in the lease.

The first informal offer to sell the brewery premises was provided in a late January 2021 phone call between the parties' respective counsel. Counsel for TTP stated the Tower Theatre parcel was being sold for $6.8 million and the brewery premises would be valued at $2.5 million. Later, TTP provided formal written notice and unilaterally set the price for the sale of the brewery premises at $1.268 million. Only after months passed

39.

and J&A commenced litigation did it obtain a copy of the sales agreement and discover the price offered for the Tower Theatre parcel was $3.9 million.

J&A provides various methods of calculating a purchase price for the brewery premises based on the sales price of $3.9 million for the entire Tower Theatre parcel contained in the sales agreement. The results of various calculations all show a sales price significantly lower than that proposed by TTP. In one method, J&A referred to the appraised values of the component parts of the Tower Theatre parcel as asserted by Laurence Abbate. He stated the appraised value of the Tower Theatre was $2.67 million, an adjoining restaurant space was $820,000, and the brewery premises was $1.268 million, for a total appraised value of $4.758 million. But the sales agreement was for $3.9 million, nearly a million dollars less than the total appraised value. As Adventure Church was only paying 82% of the appraised value of the Tower Theatre parcel, J&A contends a matching value for the brewery premises would be 82% of its appraised value of $1.268 million, which is approximately $1.040 million. Alternatively, if the $3.9 million price was divided proportionately based on the square footage of all the properties found on the Tower Theatre parcel, of which the brewery premises is only 15% of the overall square footage, a value for a matching price could be $585,000.

There is no indication the trial court attempted to determine whether the unilaterally set prices offered by TTP to J&A for the brewery premises complied with the terms of the right of first refusal and was equal to or more favorable than the third-party offer. The court considered the offer to be fair, reasonable, and supported by a professional appraisal. Those express statements weigh against finding the court attempted to address the arguments and evidence presented by J&A that the offers did not comply with the express price term contained in the right of first refusal.[11]

---

[11]     Additionally, the language of the trial court's order appears to be copied verbatim from its prior order denying J&A's request for a preliminary injunction. At the time the

This court, in requesting briefing, specifically asked the parties whether the trial court's determination was an interpretation of the value of the purchase price of the brewery premises under the terms of the lease and, if so, if substantial evidence supported the value. TTP responded by asserting that determining the price based on the terms of the lease was "not feasible" or too difficult and the offered price was supported by a professional appraisal. It also criticized an approach based on determining the price based on the pro rata square footage percentage as each square foot of the property does not necessarily have the same value. But TTP does not present any argument or explanation how the prices offered were correlated to the price offered to the third party. That there is evidentiary support to find the $1.268 million offer was reasonable and supported by an appraisal is not enough. The plain language of the right of first refusal states the purchase price is equal to or more favorable than the third party offer. The appraisal of the component parts of the Tower Theatre parcel resulted in a total price significantly greater than the third party offer. TTP does not attempt to explain the discrepancy, but its argument infers the trial court was justified in modifying the express price term and replace it with a reasonable price. Based on the legal authority provided, the trial court was required to set the price as defined by the lease, not disregard it.

Alternatively, assuming the trial court found the $1.268 million to be a matching price to the third party offer under the terms of the lease, J&A has raised valid concerns the offered price for the brewery premises was significantly higher than a price correlated to Adventure Church's offer to purchase the Tower Theatre parcel. The trial court provided no discussion or reasoning for setting the sales price substantially higher than that obtained using an apportionment method taking into account the actual sales price of the greater parcel. Even providing the trial court significant leeway and discretion to set

prior order was issued, the evidence of the third party offer from Adventure Church had yet to be provided to J&A and J&A was unable to present this argument.

41.

the price as defined in the lease, the price provided is too high to be legally justifiable in this instance. Upon review, we find probable validity to J&A's claim the right of first refusal was not waived as it was never provided an offer providing a purchase price for the brewery premises complying with the terms of the lease.

>       F.      Bad Faith

The trial court also found the failure to disclose the sale price offered by the church without consequence, as it held the offer would not necessarily clarify the purchase price of the brewery premises. But the trial court failed to address J&A's argument TTP engaged in bad faith by initially failing to disclose and then exaggerating the sales price to induce J&A not to exercise its right of first refusal. Not only did TTP's counsel provide an inflated value of the purchase price of the Tower Theatre parcel, TTP later presented a unilateral offer to sell at the appraised value of $1.268 million, even though it knew the appraisal valued the parcel at significantly more than the actual sales price offered by Adventure Church. As it was engaged in this conduct, TTP refused to provide a copy of the September 2020 sales agreement for the Tower Theatre parcel or disclose the sales price. Accordingly, the evidence indicates TTP engaged in a pattern of overstating the price of the brewery premises while withholding the actual sale price of the Tower Theatre parcel.

" 'The seller must then present the third party offer to the grantee of the right of first refusal who, in turn, has a limited period … to either match the offer or reject it.' " (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1523.) However, if the terms presented to the prospective purchaser and tenant differed, "the offer was in bad faith, and the tenant's right was not extinguished." (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 317.) "Bad faith is shown where there is a deliberate refusal to perform." (*Kahn v. Lischner* (1954) 128 Cal.App.2d 480, 490; *Mercer v. Lemmens* (1964) 230 Cal.App.2d 167, 173.)

"Each party to a contract has a duty to do everything that the contract presupposes that he will do to accomplish its purpose [citations] and a duty not to prevent or hinder performance by the other party." (*Bewick v. Mecham* (1945) 26 Cal.2d 92, 99.) In *Bewick*, the defendant's actions "prevented the determination of the purchase price by the method contemplated by the contract." (*Ibid.*) "Defendant's obvious purpose was to make the contract inoperative and to prevent plaintiff from seeking specific performance after the price was determined by the appraisers. A party who prevents fulfillment of a condition of his own obligation commits a breach of contract [citations] and cannot rely on such condition to defeat his liability." (*Ibid.*) Moreover, section 36 (J) of the lease contained express covenants requiring the parties cooperate so the terms of the right of first refusal could be effectuated: "Further Assurances: Each party agrees to perform an further acts and execute and deliver any additional documents that may be reasonably necessary to carry out the provisions of this Paragraph 36."

Based on the evidence provided, for months TTP did not disclose to J&A it was in escrow to sell the Tower Theatre parcel to Adventure Church. Even after J&A became aware of a sale, TTP refused to provide the purchase agreement or the amount of the third party offer, overstated the sales price, and only set unilateral terms of the sale of the brewery premises. Its communications ignored the language contained in the right of first refusal regarding a matching price, and instead asserted the price it offered was fair and reasonable. TTP only disclosed the sales agreement after litigation commenced and J&A was in a position to compel the disclosure through discovery. Once J&A was provided the third party offer from the church, it provided its written notice to exercise the right of first refusal within 12 days, on May 3, 2021. TTP, in turn, provided a counteroffer. It responded it was willing to sell the brewery premises at the previously set price of $1.268 million if J&A would meet certain conditions including dismissing the lawsuit, expunging the lis pendens, and paying TTP $25,000 to cover litigation fees and

costs. The counteroffer provides evidence TTP was still refusing to comply with the terms set forth in the lease agreement.

When reviewing the applicable law and evidence presented by the parties, we find the trial court's ruling expunging the lis pendens was based on erroneous legal rulings and factual findings not supported by substantial evidence. J&A has shown the probable validity of its real property claims and is entitled to the continued recordation of the lis pendens pending the outcome of this litigation.

V.     ATTORNEY'S FEES

In 1992, section 405.38 was revised so that the prevailing party on a motion to expunge was *entitled* to recover its attorney fees and cost *unless* specified findings were made supporting the denial of fees. (*Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1018.) The purpose underlying section 405.38 is to curtail misuse of the lis pendens procedure. (*Castro*, *supra*, at p. 1022.) The current version provides: "The court *shall* direct that the *party prevailing on any motion* under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion *unless* the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." (§ 405.38, italics added.) The term prevailing party was not defined in the statute and, as a result, courts determine the prevailing party by taking a practical approach that analyzes "the extent to which each party has realized its litigation objectives." (*Castro, supra,* at p. 1023.)

Applying this approach, we determine that J&A is the prevailing party for purposes of section 405.38. J&A realized its litigation objectives by successfully defending against the motion to expunge the lis pendens, thereby maintaining protections to its real property claim until the matter is fully adjudicated at trial.

In addition, we find as a matter of law that TTP did not act with substantial justification and other circumstances do not make the impositions of an award of fees

44.

unjust. First, TTP's arguments about defective service under section 405.22 did not address the rules for providing notice to a partnership and did not develop the facts relevant to the application of those rules. Second, its actions in failing to provide accurate and timely information relevant to the exercise of the right of first refusal was not substantially justified. Therefore, we conclude the exceptions do not apply and J&A is entitled to reasonable attorney fees and costs under section 405.38.

Also, J&A is the prevailing party for purposes of California Rules of Court, rule 8.493(a)(1)(A) and, therefore, is entitled to recover the costs incurred in this writ proceeding pursuant to that rule.

## DISPOSITION

Let a writ issue directing respondent Fresno County Superior Court in case No. 21CECG00440 to vacate its July 7, 2021 order granting real party in interest's motion to expunge lis pendens and enter a new order denying the motion to expunge lis pendens. Respondent is also directed to hold further proceedings to determine the amount of petitioner's reasonable attorney's fees and costs under Code of Civil Procedure, section 405.38 resulting from the motion and this subsequent writ petition. Additionally, as the prevailing party to this proceeding, petitioner is entitled to costs under California Rules of Court, rule 8.493(a)(1)(A).

FRANSON, ACTING P. J.

WE CONCUR:

SMITH, J.

SNAUFFER, J.

45.